UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| STEPHEN NICHOLAS LYNCH and ) | |
| GWENNA KAY LYNCH ) | |
|        Debtors. ) | |
| ) | |
| ) | |
| ) | |
| STEPHEN NICHOLAS LYNCH ) | |
| ) | |
|        Plaintiff/Debtor, ) | |
| ) | Case No. 11-12457-M |
| v. ) | (Chapter 7) |
| ) | Adv. No. 14-01059-M |
| KENNETH K. KLEIN, JUDI KLEIN; ) | |
| KRISITIN KLEIN DAFFERN; ERIC M. ) | |
| DAFFERN; KELINCO RESIDENTIAL ) | |
| CONSTRUCTION, LLC, an Oklahoma ) | |
| Limited Liability Company; ROBERT B. ) | |
| SARTIN; PATRICK J. MALLOY, III; C. ) | |
| ROBERT BURTON, IV; BOKF, N.A.; ) | |
| SCOTT F. LEHMAN; CFR, INC.; ) | |
| WESTPORT INSURANCE CORPORATION; ) | |
| BRUCE A. MCKENNA; CHRISTOPHER ) | |
| PETTET; VALERIE MITCHELL; DISTRICT ) | |
| COURT IN FOR OSAGE COUTNY, ) | |
| OKLAHOMA; DISTRICT COURT FOR ) | |
| TULSA COUNTY, OKLAHOMA ) | |
| ) | |
|        Defendants. ) | |

**DEFENDANT PATRICK J MALLOY III'S MOTION TO DISMISS PURSUANT TO THE BARTON DOCTRINE AND FED. R. CIV P. 12(b)(1); MOTION TO DISMISS BASED ON THE DOCTRINES OF RES JUDICATA; COLLATERAL ESTOPPEL, JUDICIAL ESTOPPEL, FAILURE TO STATE A CLAIM PURSUANT TO 12(b)(6) FED. R. CIV. PRO; AND REQUEST FOR RELIEF UNDER 11 U.S.C. § 105; And RULE 9011 BANKR. R. CIV. PRO.**

Defendant Patrick J. Malloy, III ("Malloy") hereby moves pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss all claims asserted against Malloy personally on the basis that such claims were commenced without the authority of the Bankruptcy Court which constitutes a blatant

1

violation of the *Barton* doctrine and applicable Tenth Circuit law. See *Satterfield v. Malloy* 700 F.3d 1231(10th Cir. 2012). Malloy additionally seeks dismissal of all claims asserted against him pursuant to 12(b)(6) on the basis that such claims are barred by res judicata, collateral estoppel, and failure to state a claim. Finally, Malloy seeks relief based on this Court's broad powers under 11 U.S.C. §105 and Rule 9011(c) in order to protect and insure the integrity of this Court.

## INTRODUCTION

The claims filed in this matter against Malloy and other parties represent the greatest abuse of process and vexatious litigation perpetrated by an attorney this Trustee has seen in 42 years of practicing law. Before addressing the relevant facts and procedural history, it is worth noting that the Court is afforded broad powers under 11 U.S.C. § 105 to issue any order necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. In addition, Rule 9011(c) Fed. R. Bankr. P. authorizes the Court to impose sanctions on its own initiative or by motion. Finally, under the Local Rules of the United States District Court for the Northern District of Oklahoma, LCvR 83.6(c), this Court may refer instances of misconduct by counsel to the Committee on Admissions and Grievances. Malloy implores the Court to invoke its power under either §105 and/or Rule 9011 to discipline Plaintiff and his counsel, Martha Hyde ("Hyde") for their relentless pursuit of frivolous claims and flagrant disregard of the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

Almost the entire premise of this action is Plaintiff's allegation that an order entered in the underlying case approving a compromise by and between himself, his co-debtor wife and certain of the defendants in this matter was entered without his knowledge and consent—and was thus fraudulent. Plaintiff asserts these allegations notwithstanding the fact that:

    a) the underlying case record establishes that the order was entered upon Notice and Opportunity, including Notice to this Plaintiff, without objection from any party, including this Plaintiff;

    b) the actions taken by this Plaintiff and certain of the defendants named in this matter in the State Court foreclosure proceeding which followed the entry of this order were wholly consistent with Plaintiff's consent to the terms and conditions of the compromise and totally inconsistent with Plaintiff's now alleged ignorance of such terms;

    c) the orders filed in the state court matter were wholly consistent with the terms and conditions of the compromise and wholly inconsistent with the allegations asserted by Plaintiff herein; and

    d) the Bankruptcy Court's entered a final and non-appealable order in the main case (Doc. 169) in October of 2014 denying this Plaintiff's motion to vacate the order approving of compromise.

## ARGUMENT & AUTHORITY

**1) The Claims Asserted Against Malloy Personally must be Dismissed under the *Barton* Doctrine and Applicable Tenth Circuit Law.**

Plaintiff admits in his First Amended Complaint that "Defendant Patrick J. Malloy III (hereinafter referred to as 'Malloy') was at all times herein mentioned the Bankruptcy Trustee for Lynch Bankruptcy Estate in the main case 11-12457 in the United States Bankruptcy Court for the Northern District of Oklahoma." *See* First Amended Complaint, p.3, ¶ 8. Indeed, Malloy has been and continues to be the Trustee in this proceeding. As a result, asserting claims against Malloy personally without first obtaining authority of this Court to do so is a blatant and willful violation of the *Barton* doctrine and applicable Tenth Circuit law. *See Satterfield v.*

3

Malloy 700 F.3d 1231(10th Cir. 2012).  The doctrine was first established by the U.S. Supreme Court in *Barton v. Barbour* 104 U.S. 126 (1881). The doctrine bars claims against a Trustee personally for acts taken as Trustee without first obtaining permission of the bankruptcy court. In *Satterfield v. Malloy* (*supra* at 1234) provided:

"Our sibling courts have frequently applied the doctrine in suits against a bankruptcy trustee holding that the Barton doctrine applies to claims arising from 'acts done in the trustee's official capacity and within the trustee's authority as an officer of the court (citations omitted).

On page 1236 and continuing on 1237 the court quoted approvingly from *In re Litton* 136 F.3d 544, 545 (7th Cir. 1998):

"…without the requirement [of obtaining leave from the appointing court] trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees…Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively."

As applied to the instant case the claims asserted against Malloy appear to arise out of the utterly unfounded allegation related to the filing of the motion to compromise and the submission of the order approving compromise. Clearly Malloy was acting in his capacity as Trustee when the motion was filed and the order approving was submitted. Thus any and all claims based on or arising out of these actions are barred by the *Barton* doctrine. Count Eleven of the Plaintiff's complaint does contain a broad and general allegation against Malloy and others of a conspiracy to pursue abuse of process and malicious prosecution of claims against the Plaintiff. However, the only actions taken by Malloy which are set forth in the **Factual Background** section and which are complained about in the complaint are the motion to settle and the submission of the order approving same. There are no allegations, nor could there be, that Malloy was involved in any pre-bankruptcy litigation with the Plaintiff. Likewise there are no allegations, nor could there be, that Malloy was involved in the state court foreclosure proceedings which took place post-

bankruptcy. As a result the Eleventh Cause of Action must also be dismissed on the basis of the *Barton* doctrine.

**2**. **Any And All Claims Against Malloy Arising Out Of Or Related To The Filing Of The Motion To Approve Compromise And The Submission Of The Order Approving Compromise Filed In November Of 2012 Are Barred by Res Judicata, And Collateral Estoppel By Virtue of Prior Final Orders of the Bankruptcy Court And Must be Dismissed Pursuant To Rule 12(b)(6) Fed. R. Civ. Pro.**

    a) **Malloy May Pursue Dismissal Of Claims Under Rule 12(b)(6) F. R. Civ. P. Based On Res Judicata And Collateral Estoppel**

As a preliminary matter, Malloy asserts that the defenses of res judicata and collateral estoppel may be raised in a motion to dismiss based on Rule 12(b)(6). *See Miller v. Shell Oil* 345 F.2d 891(10th Cir. 1965); *Thistlewaite v. City of New York* 362 F. Supp. 88, 91 (S.D.N.Y. 1973), *aff'd* ,497 F.2d 339 (2d Cir. 1974):

> "…It is generally held that, in the interests of efficiency and expeditious judicial administration, res judicata [and as a corollary, collateral estoppel] can be raised and considered via pre-trial motion to dismiss." For the same reasons, Malloy contends that the defenses of laches and waiver may likewise be raised in a motion to dismiss.

In the context of this motion to dismiss this Court may take judicial notice of matters outside the pleadings in considering a motion under *Rule 12(b)(6)* as long as they are matters of public record. *See Molloy v. Primus Automotive Financial Services* 247 B.R. 804, 814 n. 8 (C.D. Cal 2000); *Andrews v. JM Davis* 201 F.3d 521(4th Cir. 2000); *Day v. Moscow* 955 F.2d 807, 811 (2d Cir. 1992); *Scott v. Kuhlman* 746 F.2d 1377, 1378 (9th Cir. 1984). In this regard Malloy specifically requests this Court to take judicial notice of the following bankruptcy pleadings filed in either the main case or the Adversary proceeding commenced by Kleinco seeking a judgment of non-dischargeability:

5

a) Motion To Compromise filed by Malloy on November 12, 2012 (Doc. 130);

b) Malloy's certificate of mailing with respect to the Motion to Compromise filed on November 15, 2012 (Doc 131);

c) Order approving compromise filed on November 30, 2012 (Doc. 133);

d) Agreed Judgment entered in Bankruptcy Court Adversary proceeding in favor of Kleinco Residential Construction LLC(KRC) (Doc. No. 23 in Adv. No. 12-01003);

e) Plaintiff's Notice of Appeal and Motion to Vacate relative to the order approving compromise filed on August 15, 2014 (Doc. 156);

f) Bankruptcy Court's minute order advising parties court would take no action with respect to Doc 156 *Notice of Appeal and Motion To Vacate* pending resolution of appeal9Doc 161);

g) BAP Disposition filed September 29, 2014 (Doc. 165);

h) BAP judgment dismissing appeal of November 30, 2013, order approving compromise on the basis it was untimely (Doc. 166);

i) Bankruptcy Court's minute order filed October 20, 2014, directing Plaintiff to supplement the motion to vacate on the basis that he had failed to state any factual or legal basis for the requested relief (Doc. 168);

j) Bankruptcy Court's minute order filed on October 31, 2014, denying Plaintiff's motion to vacate (Doc. 169).

**b) Application Of Res Judicata**

Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties from re-litigating issues that were or **could have been raised in the prior action**. *Satsky v. Paramount Communications Inc*. 7 F.3d 1464 (10th Cir. 1993). Res Judicata applies where there is "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Pelt v. Utah* 539 F.3d 1271-(10th Cir. 2008).  As applied to the instant case the following is clear:

6

The principal basis of the Plaintiff's claims is that the Final Order of the Bankruptcy Court approving a settlement by and between the Debtors, various third parties and Malloy, as Trustee, is "void" as a result of alleged fraud perpetrated on the Court. The terms of that settlement can be summarized as follows:

i) The Debtors, including Plaintiff, would pay $140,000 to Kleinco Residential Construction, LLC ("KRC") on or before November 21, 2012;

ii) If Debtors failed to pay this sum by the specified date:

--- a non-dischargeable Agreed Judgment would be entered against them in a pending adversary proceeding in favor of KRC for the sum of $1,078,064.33;

---an agreed judgment imposing a constructive trust in favor of KRC and against Debtors would be entered in a pending state court foreclosure proceeding relative to the Debtor' homestead for the sum of $157,811.16.

iii) Malloy would agree to release any and claims against KRC and KRC related entities and KRC would release any and all claims against the estate.

In actuality, the only terms of the settlement requiring approval from the Bankruptcy Court approval were the releases set forth in paragraph (c) above. Malloy had little or no involvement in the settlement discussions relative to the terms agreed upon by Debtors and the third-parties. Instead, Malloy relied upon the representations of Debtors in the Settlement Agreement, and the representations of their attorney, that they had agreed to settle the various claims pending for and against them in the adversary proceeding under the terms set forth in the proposed Settlement Agreement.

On November 14, 2012, Malloy filed Trustee's Motion for Compromise and Settlement of Controversy. (Doc.130) ("Motion for Compromise") seeking the Bankruptcy Court's approval of the proposed Settlement Agreement. The motion included appropriate Notice and Opportunity language which advised interested parties, **including Plaintiff**, that any objections to the

7

proposed Settlement Agreement had to be filed within fourteen (14) days from the date of the filing of the Motion for Compromise. Moreover, the Motion for Compromise included a specific representation that the parties, including Plaintiff, had executed the Settlement Agreement. That representation was based on the fact that Malloy had received a copy of a fully executed Settlement Agreement, which Malloy had no reason to believe had not been executed by all parties whose signatures appeared thereon, including Plaintiff. To the extent Plaintiff now alleges he did not sign the Settlement Agreement, such argument is a red herring given the fact the Motion for Compromise specifically placed Plaintiff on notice that all parties believed he had, in fact, signed the Settlement Agreement.

On November 15, 2012, Malloy filed his Certificate of Mailing to the matrix with respect to the Motion for Compromise (Doc. 131). The matrix included both Debtors—including Plaintiff. No objections to the proposed Settlement Agreement were filed by any party-- **including Plaintiff.** If Plaintiff had not, in fact, signed the Settlement Agreement as he now claims in this proceeding, he had a full and fair opportunity to object to the proposed Settlement Agreement. However, no such objection was filed, thus Plaintiff either manifested his complete agreement with the proposed Settlement Agreement or he waived any right to object to the terms of the proposed Settlement Agreement. As a result of the fact that no objections were filed, the Bankruptcy Court entered the Order Approving Compromise (Doc. 133) (referred to herein as "Final Order") on November 30, 2012. No appeal from the Final Order has ever been filed.

After Plaintiff failed to make the settlement payment as required under the terms of the Settlement Agreement, the Agreed Judgments specified in the Motion to Compromise were, in fact, filed of record in the respective cases. No appeal has ever been lodged with respect to the filing of the Agreed Judgments. Given the fact that Plaintiff **could have objected** to the proposed

Settlement Agreement or the filing of the Agreed Judgments on the basis he now asserts, *i.e* he did not consent to the same, the claims he now asserts are barred by res judicata *i.e.* the order approving compromise disposed of all claims by and between the parties; there is an identity of parties—Malloy, the Plaintiff, and all creditors were parties to the motion to compromise proceedings; and there was identity of issue---the validity of the order approving settlement.

However, the Bankruptcy Court procedural history does not stop here. Present counsel for Plaintiff filed a *Notice of Appeal and/or Motion To Vacate Void Order* in the Bankruptcy Case on August 15, 2014. (Doc. 156). The Notice of Appeal/Motion to Vacate sought to vacate the Final Order approving the Settlement Agreement, which Final Order was entered almost two years prior to the filing of the Notice of *Appeal/Motion to Vacate*. As a result of the pleading's reference to the phrase *Notice of Appeal*, the Bankruptcy Court on August 18, 2014, entered a Minute Order advising the parties it would take no action with respect to the requested relief until the "appeal" had been resolved (Doc No 161).

On September 29, 2014, the Bankruptcy Appellate Panel ("BAP") of the Tenth Circuit issued its mandate dismissing the appeal on the basis it was untimely. Thereafter, on October 20, 2014, the Bankruptcy Court entered a second Minute Order relative to the Notice of Appeal/Motion to vacate. (Doc. No. 168) filed by Plaintiff. In that Minute Order, the Court acknowledged the mandate of the BAP and his resulting jurisdiction to consider the portion of the earlier pleading which included the phrase "*Motion To Vacate.*" However, the Bankruptcy Court additionally found the Motion to Vacate "fatally deficient in that it fails to specify any basis upon which the Order is void." The Bankruptcy Court, thereafter, directed counsel to file a supplement to the Notice of Appeal/Motion to Vacate on or before October 30, 2014, "stating the legal and factual basis for the contention that the Order is void and subject to being set aside." *Id.*

9

The Court further advised that in the event the supplement was not filed the request would be denied. *Id.* The Bankruptcy Court could have summarily denied the Motion to Vacate on the basis that it failed to state any factual or legal basis for the relief. Instead, the Bankruptcy Court provided counsel with additional time in order to comply with Rule 9013 Bankr. R. Civ. Pro. The Bankruptcy Court basically provided counsel with a road map regarding how to comply with the applicable bankruptcy court rules. Counsel's response was **to utterly ignore the Bankruptcy Court**—which resulted in a third Minute Order (Doc. 169) **denying the requested relief**. Malloy would ask this Court to take judicial notice of the fact that no appeal was ever taken from this Minute Order and it is now final and non-appealable. Under this procedural history, the Plaintiff could have complied with the Court's order to supplement his motion to vacate and provided a factual and legal basis for the relief requested and he refused to do so. Again, that order represents a final order relative to the voidability of the order approving compromise and/or any basis to vacate the order—the very relief he now seeks in this adversary. Secondly, there is identity of parties; and thirdly the issues are identical. As a result, any claims against Malloy arising out of or based on the voidablity of the order approving compromise are barred by res judicata.

    b) **Application Of Collateral Estoppel**

    The doctrine of collateral estoppel forecloses a party from relitigating with respect to one cause of action, an issue that has already been litigated against him by an earlier judgment on another cause. *See Emich Motors Corp v. General Motors Corp.* 340 U.S. 558 (1951); *Local 167 International Brotherhood of Teamsters v. United States* 291 U.S. 293 (1934). The issue of the voidability of the subject order has already been resolved against the Plaintiff by virtue of the Bankruptcy Court order denying the motion to vacate.

   c) **Application Of These Doctrines To The Specific Causes Of Action Asserted Against Malloy**

While the First Amended Complaint is almost unintelligible, Malloy appears to be referenced in three causes of action. The *First Cause Of Action* in which Malloy is mentioned seeks to vacate the Final Order of the Bankruptcy Court entered on November 30, 2012, approving the proposed settlement—notwithstanding Judge Michael's final Minute Order on October 31, 2014, denying that very same relief. However, there does not appear to be any relief sought against Malloy personally in the First Cause of Action.

The *Second Cause of Action* also mentions Malloy and is entitled "*The Order Approving Compromise Is Void For Fraud Upon The Court*." Aside from the fact that this "cause of action" does not state a cognizable claim, the cause of action again attacks the Final Order approving the settlement on the basis that it is "void"—again despite the prior ruling of Judge Michael by Minute Order dated October 31, 2014, denying Plaintiff's previously filed Motion to Vacate. The alleged facts supporting this claim are that "Defendants Malloy, KRC, Soule and Sartin knowingly, intentionally, willfully and maliciously committed fraud upon this Court in representing that Plaintiff had agreed to and executed a settlement agreement at the time Malloy filed motions to shorten time and approve Compromise of Controversies." This cause of action concludes by seeking "sanctions" against Malloy and others in the form of actual and punitive damages. All of these assertions could have been asserted prior to the submission of the order approving compromise and/or in a supplement to the Motion to Vacate. As a result, these claims are barred by res judicata, issue preclusion, collateral estoppel, waiver and laches.

The Third cause of action that seems to involve Malloy is the Eleventh Cause of Action entitled "*Conspiracy To Commit Fraud And Fraud*." The allegations which purportedly support this claim are that Defendants Klein, Kristin, Daffern, KRC, Soule, Sartin, BOK, Lehman,

11

Malloy, Burton, Pettet, Mitchell, McKenna, CFR and Wesport[*sic*] were somehow involved in a conspiracy "starting on or about January 1, 2006, and continuing to the present" which involved the filing of "various actions in various courts, which actions were maliciously prosecuted, entailed abuse of process, violations of the automatic stay and fraud upon Plaintiff."

The only allegation against Malloy which could conceivably relate to this cause of action is the motion to approve compromise. Leaving aside for a minute that the filing of that motion does not support an allegation of "abuse of process" or "malicious prosecution" Malloy's motion was approved by the Bankruptcy Court with full notice to the Plaintiff and no objection was filed by the Plaintiff. That order is now final and non-appealable. Additionally, to the extent the cause of action relates to pre-bankruptcy actions, such actions constituted property of the estate upon the filing of this action pursuant to 11 U.S.C. § 541 and were released by Malloy pursuant to the order approving compromise. Finally, the Plaintiff could have alleged these acts in support of his motion to vacate—which he refused to. Thus these claims are now barred by res judicata and collateral estoppel.

>    3) **Claims Against Malloy In The Eleventh Cause of Action Should Be Dismissed On The Basis Of Failure To State A Claim And Judicial Estoppel**
>
>       a) **Dismissal For Failure To State A Claim.**

In addition to res judicata and collateral estoppel, the claims asserted in the Eleventh Cause of Action should be dismissed for failure to state a claim and judicial estoppel. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides "no more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.* v. *Twombly* 550 U.S. 544, 555 (2007). A complaint must contain enough facts "to state a claim to relief that is

plausible on its face" and the factual allegations must be enough to raise a right to relief above a speculative level." *Id.* The Eleventh Cause of Action refers to the commencement of unnamed and unidentified "various actions in various courts, which actions were maliciously filed…" There is no specification of any actions allegedly commenced by Malloy (or for that matter any actions commenced by anyone) and no specification of what "courts' were involved. Moreover, these claims have certain elements *e.g.* malicious prosecution requires as a predicate to the pursuit of such claim the resolution of the underlying claim in favor of the Plaintiff. See *Neely v. First St. Bk* 975 P.2d 435 (Okla. 1998). The Plaintiff has not even identified what the underlying claim was—much less alleged the resolution of that claim in his favor. In fact, with respect to bankruptcy matters that could conceivably relate to this claim, the order denying the Plaintiff's motion to vacate the order approving compromise is hardly a resolution in his favor. With respect to the state court foreclosure proceeding which proceeded after the entry of the order approving sale, and which is discussed in greater detail below, all orders entered in that matter were entered in favor of the foreclosing party, the buyer named as a defendant in this matter and parties entitled to a distribution under the bankruptcy court approved settlement *i.e.* the order approving sale was approved over the objection of the Plaintiff; an order denying his motion to vacate was entered by the State Court; the State Court approved disbursements of sale proceeds to parties pursuant to the terms of the agreement Plaintiff now asserts he knew nothing about—in some cases with no objection from the Plaintiff and in some cases despite an objection but for reasons not asserted herein.

      The elements of abuse of process are (1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse. *See Greenburgh v. Wolberg* 890 P.2d 895, 905 (Okla. 1994). The Plaintiff has failed

to assert any improper use of the judicial process with the sole exception of the alleged filing of the motion to compromise in allegedly fraudulent manner---which has discussed is now barred by res judicata and collateral estoppel.

Finally, while styled as a claim for fraud, the cause of action contains no allegations to support a claim of fraud.

### b)  Claims Barred By Judicial Estoppel

These claims constituted property of the Estate at the time bankruptcy was filed—to the extent these claims are based on a "conspiracy" which allegedly commenced in 2006. The plaintiff did not list any of these claims in his schedules. Malloy would ask the Court to take judicial notice that there are no claims scheduled in the bankruptcy based on "conspiracy" "abuse of process" and "malicious prosecution." As a result, the debtor is barred from pursuing these claims based on judicial estoppel. *See Paup v. Gear Prods Inc*. 327 F. Appx's 100, 107 (10th Cir. 2009); *Eastman v. Union Pac. R. Co*. 493 F.3d 1151 (10th Cir. 2007).

### 4. The Procedural History Of The State Court Foreclosure Proceeding Establish That These Proceedings Were Commenced In Bad Faith; Constitute Vexatious Litigation; And Represent A Pattern Of Abusive Process

Subsequent to the entry of the order approving compromise, parties pursued a conclusion of the State court foreclosure proceeding relative to Plaintiff's homestead which is the principal subject of this proceeding. The claims asserted herein by the Plaintiff are, in essence, a poorly disguised attempt to attack the State court order approving the sale of the Plaintiff's homestead and to disburse monies to certain of the defendants indentified in these proceedings. Given the fact that there is a pending appeal of the Order Approving Sheriff Sale, Malloy does not reference the State court pleadings and orders for purposes of establishing the application of res judicata and collateral estoppels. However, Malloy does, in part, rely on those pleadings and

orders to establish that the filing of this proceeding was in bad faith and constitutes vexatious litigation thus warranting the imposition of sanctions under 11 U.S.C. § 105 and/or Rule 9011 Bank. R. Civ. Pro. The combined history of the bankruptcy proceedings during the late fall of 2012; the State court foreclosure proceedings which followed including the Petition In Error; the Notice of Appeal and/or Motion To Vacate filed in the main bankruptcy case in August of 2014; the order of the Bankruptcy Court denying Plaintiff's motion to vacate; the filing of the original adversary in this matter; and finally the First Amended Complaint filed herein establish a pattern of abusive and vexatious litigation that has resulted in unnecessary costs and expenses for all named Defendants. This Court has inherent power to sanction counsel for this behavior. For the purposes set forth in this paragraph, Malloy would ask this Court to take judicial Notice of the state court pleadings and orders referenced below and attached hereto as exhibits.

a) **The State Court Confirmation Of Sheriff Sale And Related Pleadings**

Pursuant to the Order Approving Settlement, Agreed Judgments were entered in both the Bankruptcy Court and the state foreclosure proceeding ("State Court Foreclosure"). Thereafter, the following occurred:

--On March 22, 2013, Plaintiff filed in the State foreclosure proceeding a *pro se* pleading entitled "*Emergency Motion For Stay Of Foreclosure Sale And Confirmation Hearing And For Immediate Stay During The Consideration Of This Motion And Defendant's Emergency Motion To Vacate Void Final Summary Judgment Based Upon Plaintiff's Lack Of Standing And Memorandum Of Law In Support*" ("Emergency Motion for Stay of Foreclosure"). The entire premise of the Emergency Motion for Stay of Foreclosure was that the plaintiff in that matter and a Defendant in this matter, Bank of Oklahoma ("BOK"), **did not have standing**. Attached as **Ex. A** is a copy of this "Emergency Motion." There are no allegations contained in the Emergency Motion for Stay of Foreclosure relative to the claims now being asserted regarding a void and fraudulent order filed in the Bankruptcy Case and/or violations of the automatic stay by BOK and/or any other party and/or that the prosecution of the foreclosure proceeding constituted an abuse of process and malicious prosecution.

--Subsequent to the filing of this pleading, Plaintiff, now acting by and through yet another counsel, David R. Keesling, filed an *Objection to Confirmation of Sheriff's Sale or Alternatively to Continue the Hearing on the Motion to Confirm Sale Pending Redemption* ("Objection to Confirmation") in the State Court Foreclosure. The sole and only basis for this

15

objection related to Plaintiff's right to redeem.  Plaintiff's Objection to Confirmation contains no allegations that the Bankruptcy Court's Final Order approving settlement was void or fraudulent, that the foreclosure proceedings had been pursued in violation of the automatic stay, and/or that the prosecution of the foreclosure constituted an abuse of process or malicious prosecution. Plaintiff's Objection to Confirmation filed in the State Court Foreclosure is attached as **Ex. B.**

--Notwithstanding Plaintiff's objections to confirmation, the State Court did, indeed, on March 25, 2013, confirm the sale.  Attached as **Ex. C** is a copy of the court's Order Confirming Sheriff's Sale And Disbursement Of Funds. On April 3, 2013, Plaintiff, acting by and through a different attorney, Gregory G. Meier, filed a *Motion to Vacate Order Confirming Sheriff's Sale* on March 25, 2013. Attached as **Ex. D** is a copy of the *Motion to Vacate Order Confirming Sheriff's Sale.* As noted in the pleading, Plaintiff's complaints were again related to his right of redemption and/or that the sales price was "grossly inadequate." There are no allegations relative to a fraudulent Bankruptcy Court order, lack of standing, abuse of process, malicious prosecution or violation of the stay.

-The State Court denied the *Motion to Vacate Order Confirming Sheriff's Sale* and Plaintiff filed a Petition In Error with the Oklahoma Supreme Court, again acting by and through counsel, Gregory G Meier. Attached as **Ex. E** is a copy of that Petition in Error. As noted in an exhibit attached to the *Petition In Error*, the basis for the appeal was that Plaintiff was denied his right to redeem and the sales price was grossly inadequate. The Petition in Error did not raise any of the claims now being asserted by Plaintiff in this proceeding.

b) **State Court Orders and Pleadings Filed in the State Court Foreclosure Proceeding Relative to the Distribution of Sale Proceeds**

**The pleadings filed in the State Court Foreclosure action in connection with the proposed distribution of sale proceeds are simply devastating to the claim**s **Plaintiff now asserts:**

--On March 19, 2013, KRC filed in the State Court Foreclosure proceeding an *Application to Disburse Funds*.  Attached as **Ex. F** is a copy of that Application. On April 29, 2013, CFR and Westport also filed, **with notice to this Plaintiff and his wife,** an *Application To Disburse Funds*. Attached as **Ex. G** is a copy of that Application. As noted in the certificate of mailing, notice of the KRC *Application to Disburse Funds* was mailed to Plaintiff and his then spouse— the joint Debtor in the Bankruptcy case. The KRC application is **directly the result of the Settlement Agreement approved by the Bankruptcy Court---**which Plaintiff now asserts he did not agree to and knew nothing about. In the very first paragraph of the application KRC states:

> **On December 7, 2012, Defendant KRC obtained a Consent Journal Entry of Judgment and Decree of Foreclosure** wherein KRC was granted an in rem judgment against Defendants, Stephen Nicholas Lynch and Gwenna Kay Lynch (collectively 'Lynch'), in the principal sum of $157,811.16, together with interest thereon at the judgment rate until paid (emphasis added).

This "Consent Judgment" is of course the "Consent Judgment" referenced in the Settlement Agreement approved by the Bankruptcy Court. This pleading is directly tied to and based on the Settlement Agreement approved by the Bankruptcy Court. Yet, **after notice to Plaintiff, no objection to the Application to Disburse Funds was filed.** On March 25, 2013, the State Court, after receiving no objection to the Application to Disburse Funds, entered an Order granting the application ("Order Disbursing Funds")—including the requested payment to KRC of the sum of **$157,811.16.** Attached as **Ex. H** is a copy of the Order Authorizing Disbursing Funds.

--On April 4, 2013, KRC filed a second Application to Disburse Funds ("Second Application to Disburse Funds") relative to moneys not distributed prior to the previous order. Attached as **Ex. I** is a copy of that Second Application to Disburse Funds. The Court's attention is directed specifically to the exhibits attached to the Second Application to Disburse Funds. Attached as an exhibit to the Second Application was a filed stamped copy of an "Amended Statement of Judgment" with respect to the **Agreed Judgment entered in the Bankruptcy Case pursuant to the Bankruptcy Court approved settlement against Plaintiff in favor of KRC for the sum of $1,078,064.33**. This document was filed in Tulsa County for purposes of establishing a judgment lien in favor of KRC against Plaintiff's real estate. At the time this Second Application was filed, Plaintiff was represented by counsel, and Plaintiff himself was mailed a copy of the pleading. This Agreed Judgment is the very judgment he now asserts was filed without his knowledge or consent and was somehow a fraudulent judgment.

Attached as an additional exhibit to the application **is an actual copy of the Agreed Judgment filed in the Bankruptcy Case.** On or about April 22, 2013, Plaintiff, acting by and through counsel, Gregory Meier, filed an Objection to the Second Application ("Objection to Second Application") Attached as **Ex. J** is a copy of that Objection to Second Application. As noted the **sole and only basis** for the Objection to Second Application was that Plaintiff had moved to vacate the order approving the sale, and thus any disbursement was premature. The Objection to Second Application does not contain any reference to the claims now asserted. The Objection to Second Application contains no assertion that the Agreed Judgment had been entered fraudulently without the Plaintiff's knowledge or consent, or that the Agreed Judgment was related to a Bankruptcy Court Order that had been entered without the Plaintiff's knowledge and consent and was somehow fraudulent as to the Plaintiff.

--On April 29, 2013, just as Kleinco had previously done, CFR and Westport, pursuant to default judgments rendered against the Debtors, including this Plaintiff, filed an Application To Disburse Funds. Attached as **Ex K** is a true and exact copy of that Application. **The Plaintiff filed no objection or response of any type to the Application.**

-On February 14, 2014, the State Court entered an Order Approving the Application. Attached as **Ex L** is a true and exact copy of that order. **That order contains specific findings** relative to the **entry of the nondischargeable judgment entered in the United States Bankruptcy Court against this Plaintiff**; the filing of that judgment in Osage County "which **created a valid judgment lien against all real property owned by Lynch in Osage** County pursuant to Title 12 O.S.-.§706 ("Bankruptcy Judgment Lien"); and "the movants **have good and valid liens in the amount of their judgments.** Based upon these findings, the court ordered the disbursement

17

of remaining funds, in part, to Kleinco, CFR and Westport. At no time has the Plaintiff sought to vacate that order for any of the reasons now asserted in these proceedings. Moreover, most of these findings were implicitly agreed to by the Plaintiff by virtue of the fact that the only basis for his sole objection to the application was that it was "premature."

It is not difficult to understand what Plaintiff's motivation in this proceedings is. In order to avoid the consequences of his own actions or inactions in the State court proceedings and the rulings against him, he has come into this Court with a barrage of wild and unfounded claims in a desperate attempt to attack orders of the State court for reasons he did not assert in State court which he cannot do and which this Court has no jurisdiction to do.

**5. Relief Under 11 U.S.C. §105; Rule 9011 Bankr. R. Civ Pro. And 28 U.S.C. § 1927**

As noted above, this Court has broad powers to enforce and protect the orders of the court and the integrity of the system Plaintiff and his counsel have engaged in asserting wild and unfounded allegations against Judges, trustees, attorneys for various parties and the parties themselves. A good discussion of this inherent power can be found at *In re Courtesy Inns, Ltd.*v. *Bank of Santa Fe* 40 F.3d 1084 (1994). In this matter the debtor filed a Chapter 11 proceeding in order to avoid a foreclosure sale. The bank filed a motion to dismiss on the basis it had been filed in bad faith for the sole purpose of staying the sale. The bank additionally filed a motion for sanctions—notably without complying with the safe harbor procedures of Rule 9011. The bankruptcy court awarded sanctions in the form of attorney fees against both the debtor and the principal who commenced the action. In doing so the court relied on *28 U.S.C. § 1927*. On appeal the 10th Circuit noted that § 1927 provides:

> "Any attorney or other person admitted to conduct cases in any court of the United States of Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct."

18

The court found that the bankruptcy court did not have jurisdiction to impose sanctions under 28 U.S.C. § 1927. However, the court went on to conclude that it could affirm the bankruptcy's imposition of sanctions on a different basis. The court discussed the bankruptcy court's inherent powers under § 105. At *1089 supra* the court noted the Supreme Court case of *Chambers v. NASCO Inc.* 501 U.S. 32 (1991) which essentially rejected the idea that the specific federal statutes and the various sanctioning provisions of the federal rules reflect legislative intent to displace the court's inherent powers. Continuing on this page the court stated:

> "It has long been understood that 'certain implied powers must necessarily result to our *Courts of justice* from the nature of their institution' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.' (Citations omitted) For this reason 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to implore silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" (Citations omitted). The court went on to conclude that the bankruptcy court had inherent power under § 105 to impose sanctions against both the corporate debtor and its principal for filing an action "purely for the purpose of delaying the creditor from enforcing its rights."

The actions of the debtor and its principal in Courtesy Inns pale in comparison to the abuse which has been perpetrated in these proceedings. Particularly given the distinction that the debtor in this matter is represented by counsel—who should be held to a higher standard than the pro se debtor in *Courtesy Inns*. Under this Court's powers under either § 105 or Rule 9011, Malloy urges the Court to impose monetary sanctions against counsel for the Plaintiff for all costs incurred in this matter. It should be noted that in *Courtesy Inns* there was no requirement that the moving party comply with the safe harbor provisions of Rule 9011.

An additional sanction Malloy would ask the Court to consider are filing restrictions. Monetary sanctions may simply be insufficient in this case. Plaintiff's counsel's actions show a complete disregard for applicable legal principles and fundamental ethical requirements. In the matter of *In re Wallace* 288 B.R. 139 (Bankr. N.D. Okla. 2002), the court imposed filing

restrictions against a debtor who had engaged in a pattern of abusive filings. This Plaintiff has, in fact, engaged in a pattern of abusive filings. The record history described above establishes that conclusively. As in *Wallace*, the Plaintiff in this matter has sued Judges, attorneys, creditors and the Trustee in his personal capacity with no legal or factual basis.   Unless restrained this kind of abusive behavior will continue unabated. Plaintiff and his counsel clearly know no boundaries.

Finally, Malloy would ask that this Court consider referral of counsel's conduct to the Northern District Committee on Admissions and Grievances.

Wherefore, Malloy prays for an order dismissing all claims against him and for an order granting additional relief this Court deems equitable and necessary including the imposition of sanctions pursuant to 11 U.S.C. § 105.

Respectfully Submitted,


MALLOY LAW FIRM, P.C.


By:   s/ Patrick J. Malloy III
      Patrick J. Malloy III, OBA #5647
      MALLOY LAW FIRM, P.C.
      One W. 3rd Street, Suite 1750
      Tulsa, Oklahoma  74103
      Telephone: (918) 794-4952
      *ATTORNEYS FOR TRUSTEE*