IN THE DISTRICT COURT IN AND FOR OSAGE COUNTY
STATE OF OKLAHOMA

BOKF, N.A. D/B/A BANK OF OKLAHOMA, )
SUCESSOR BY MERGER TO BANK OF )
OKLAHOMA, N.A., )
                      )
           Plaintiff, )
                      )
vs. )    Case No. CJ-2012-37
                      )    Judge Gambill
STEPHEN NICHOLAS LYNCH a/k/a NICK )
LYNCH and GWENNA KAY LYNCH a/k/a )
GWENNA LYNCH a/k/a GWENNA KAY )
MORRISON a/k/a GWENNA KAY MORRISON )
LYNCH, Husband and Wife, et al., )
                      )
         Defendants. )

District Court, Osage County, Okla.
FILED

APR 3 2013

ANGIE BRUCE, Court Clerk
By_____ Deputy

### DEFENDANT TRUST'S MOTION TO VACATE ORDER
### CONFIRMING SHERIFF'S SALE FILED MARCH 25, 2013

Comes now Defendant Lynch Family Revocable Trust ("Trust"), pursuant to 12 O.S. §1031,

and for it's Motion to Vacate and Set Aside the Order Confirming Sheriff's Sale filed March 25,

2013, alleges and states as follows:

       1.      The Trust is the record owner of the property in dispute located at 12925 North 68th

West Avenue, Skiatook, Oklahoma 74070.

       2.      Prior to the confirmation hearing of March 25, 2013, the Trust filed an Objection to

the Confirmation of Sheriff's Sale, or in the Alternative, to Continue the Hearing on the Motion to

Confirm Sale Pending Redemption. In said Objection, the Trust informed the Court it wished to

exercise it's right of redemption as they were working on financing.

       3.      On the same day the Objection was filed, March 22, 2013, the terms of the financing

with Tanner Financial Services, Inc. ("TFS") were satisfied. *See Exhibits "A" and "B", Letters dated*



214

*March 22, 2013 from TFS*. This was three (3) days prior to the confirmation hearing. The Trust's Objection, which in essence was a Motion to Redeem, was therefore timely filed.

## I.     The Trust's Right of Redemption.

Under Oklahoma law, owners of real property have a right of redemption. The sale of the real property is not final until it is confirmed by the trial court. The Trust, through it's Objection filed March 22, 2013, was attempting to exercise it's right of redemption. Under, 12 O.S. §765, a party can file a written objection for the confirmation of sale and the court may continue the hearing to allow the interested persons to adequately prepare their objection to the confirmation. In this matter, there had been no prior continuances. The financing was in place prior to confirmation. The funds were available and remain available to satisfy all judgment creditors and redeem the property for the Trust. *See Exhibit "C", Affidavit of James A. Muckleroy, representative for TFS, affirming all stipulations are in place and the property in dispute can close anytime this week of next week, Exhibit "D", Affidavit of David M. Dyer, affirming there are no title issues on the real property in dispute, and Exhibit "E", The Settlement Statement (HUD1)*. The Order confirming Sheriff's Sale must be vacated so that the Trust's right of redemption would be restored.

Oklahoma Statute Title 42, Section 18 states, "Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed." The Trust had the financing to redeem the property and was ready before the confirmation hearing to take back its property, as was their right.

*State v. Loughridge*, 1953 OK 246, 262 P.2d 162, held that even after confirmation of sale, a court, if it is timely and properly invoked, can examine the equities of the parties associated with facts, circumstances, and transactions, and, if "...it appears that confirmation sacrifices the interests

of the mortgagors or their successors, it is within the sound judicial discretion of the court to vacate

the order of confirmation and allow said defendants to redeem, if they have made proper tender of

the mortgage indebtedness, interest and other charges."

> A Court may adjust equities in connection with confirmation of a sheriff's sale, and may do this even after confirmation on motion to vacate the order confirming the same. *Id.* See also *City of Wewoka ex rel. North v. Fink*, 197 Okl. 623, 173 P.2d 936, 937.

As shown above, the Trust was prepared at the time of confirmation and remains prepared

to exercise their right of redemption.

## II.     The Confirmation of Sale Must be Vacated Based Upon Equity and Irregularities of the Sheriff's Appraisal.

A confirmation can be vacated by the court due to irregularities in the sale. See *Wilmarth*

*v. Helton*, 1938 OK 118, 77 P.2d 714. The Sheriff's Appraisal filed in this matter on October 17,

2012, appraised the real property at $520,000.00. An appraisal was conducted July 25, 2012, by

Wilma Watson with WS Watson, Inc. for the Trust. Ms. Watson appraised the property at

$850,000.00, and stands by her appraised value today. *See Exhibit "F", Appraisal dated July 25,*

*2012, and Exhibit "G", Affidavit of Wilma Watson*. At the sheriff's sale, the real property was sold

well under two-thirds it's actual value per the July Appraisal. The Sheriff's failure to adequately

appraise the real property creates a irregularity and therefore the confirmation must by vacated.

"A confirmation's reversal is proper when (1) the sale price is so grossly inadequate that it

shocks the conscience of the court; (2) the sale price is grossly inadequate and the sale is tainted by

additional circumstances; or (3) the result is inequitable to one or more of the parties before the

court, whether owner, purchaser, or creditor." *United Oklahoma Bank v. Moss*, 1990 OK 50, 793

P.2d 1359, at ¶20. The two appraisals, the Sheriff's and the private appraisal, prepared only months

216

within each other, are $330,000.00 apart. The sale price of the property in dispute of $346,666.00,

is grossly inadequate. This coupled with the owner's willingness and ability prior to and on the date

of confirmation to make proper tender, shows that it is equitable to vacate the Order Confirming

Sheriff's Sale.

WHEREFORE, Defendant Trust prays this Court grant it's Motion to Vacate the Order

Confirming Sheriff's Sale filed March 25, 2013, therefore restoring it's right of redemption in the

property in controversy.

Respectfully submitted,

Gregory G. Meier, OBA #6122
Angeline S. Morris, OBA #22241
MEIER & ASSOCIATES
1524 South Denver Avenue
Tulsa, Oklahoma 74119-3829
(918) 584-1212 - Voice
(918) 584-1295 - Facsimile

-4-

217

## CERTIFICATE OF MAILING

I hereby certify that on this  3ʳᵈ  day of April, 2013, a true and correct copy of the above and foregoing instrument was mailed, via United States mail, postage prepaid, to:

Eric Daffern
Daffern law Firm, PLLC
Southbridge Office Park
1719 E./ 71ˢᵗ Street
Tulsa, OK 74136

Robert B. Sartin
Barrow & Grimm, P.C.
110 W. Seventh Street, Suite 900
Tulsa, OK 74119-1044

Scott F. Lehman
Lathan, Wagner, Steele & Lehman, P.C.
1800 S. Baltimore, Suite 500
Tulsa, OK 74119

Gentner F. Drummond
Drummond Law Firm, PLLC
1500 S. Utica, Suite 400
Tulsa, OK 74104

William G. Gowing
2413 E. Oakland St.
Broken Arrow, OK 74014

R. Tom Hillis
Assistant District Attorney
P.O. Box 147
Pawhuska, OK 74056

Gregory G. Meier

218

# *TFS*

# TANNER FINANCIAL SERVICES, INC.

### 2828 East 51st Street, Tulsa, OK 74105 • (918) 808-8154 Fax (918) 749-7283

3/22/2013

Re: Lynch Family Revocable Trust.

Property Address: 12925 North 68th West Avenue, Skiatook, OK 74070.

To Whom It May Concern:

This is to confirm that the stipulations required for final approval, as put forth in the previous letter dated earlier today, i.e., 3/22/13, and also reiterated below, have been satisfied today, before the close of business.

1.  Inspection of the property by the investor (Canadian General Finance). **SATISFIED**

2.  An appraisal review of the property supporting the amount of the loan. **SATISFIED**

If you have any questions, please call me.

Sincerely,

James A. Muckleroy



EXHIBIT
**A**

219

# *TFS*
# TANNER FINANCIAL SERVICES, INC.
**2828 East 51st Street, Tulsa, OK 74105 • (918) 808-8154 Fax (918) 749-7283**

3/22/2013

Re: Lynch Family Revocable Trust.

Property Address: 12925 North 68th West Avenue, Skiatook, OK 74070.

To Whom It May Concern:

Tanner Financial Services, Inc. is pleased to confirm that the above referenced entity has been approved for a mortgage loan in the amount of approximately $290,000.00, plus fees, for the redemption of the above referenced property.

The following information must be presented and deemed acceptable before a final closing can be scheduled.

1. Inspection of the property by the Investor (Canadian General Finance).

2. An appraisal review of the property supporting the amount of the loan.

If you have any questions, please call me.

Sincerely,

James A. Muckleroy


EXHIBIT
B

220

IN THE DISTRICT COURT IN AND FOR OSAGE COUNTY
STATE OF OKLAHOMA

BOKF, N.A. D/B/A BANK OF OKLAHOMA, )
SUCESSOR BY MERGER TO BANK OF )
OKLAHOMA, N.A., )
       )
         Plaintiff, )
       )
vs. )   Case No. CJ-2012-37
       )   Judge Gambill
STEPHEN NICHOLAS LYNCH a/k/a NICK )
LYNCH and GWENNA KAY LYNCH a/k/a )
GWENNA LYNCH a/k/a GWENNA KAY )
MORRISON a/k/a GWENNA KAY MORRISON )
LYNCH, Husband and Wife, et al., )
       )
         Defendants. )

### AFFIDAVIT OF JAMES A. MUCKLEROY

STATE OF OKLAHOMA )
                 ) ss.
COUNTY OF CREEK )

I, James A. Muckleroy, of lawful age, being first duly sworn upon oath, depose and state as follows:

     1.     That I have personal knowledge of the matters hereinafter set forth.

     2.     I am employed by Tanner Financial Services, Inc. ("Tanner"), located at 2828 East 51st Street, Tulsa, Oklahoma, 74105, which is handling the mortgage loan for the property located at 12925 North 68th West Avenue, Skiatook, OK 74070 ("Property").

     3.     Tanner has approved a mortgage loan in the amount of approximately $375,000.00, for the redemption of the property by the Lynch Family Revocable Trust.

-1-



2-21

4.      As of March 22, 2013, all stipulations required for final approval of funding the loan were satisfied.

5.      The approximately $375,000.00 in funds are available now, and the property financing could be closed anytime this week or next, upon coordination with True Title & Escrow, Inc.

6.      The funds available are more than sufficient to satisfy all judgment creditors and redeem the property for the Lynch Family Revocable Trust.

Further, Affiant saith not.

Dated this 3rd day of April , 2013.


_James A. Muckleroy_
James A. Muckleroy


Subscribed and sworn to before me this 3cd day of April , 2013.

_____
NOTARY PUBLIC, Commission # 02011365

My commission expires:

7/1/14



ANGIE MORRIS
NOTARY
NO.
02011365
EXPIRES
July 1, 2014
PUBLIC
STATE OF OKLAHOMA

P:\WPDATA\RE\lynch, nick\pldgs\affidavit.muckleroy.wpd

-2-

222

## AFFIDAVIT

STATE OF OKLAHOMA      )
                              ) ss.
COUNTY OF TULSA         )

Affiant, David M. Dryer, hereby subscribes and swears as follows:

1. That he is the President of True Title and Escrow, Inc.

2. That True Title and Escrow, Inc. was retained to provide closing and escrow services for the property located at 12925 N 68th W Ave Skiatook, Ok 74070.

3. That True Title and Escrow, Inc. was prepared to close the transaction and were awaiting final payoff figures from the plaintiff, Bank of Oklahoma and the third-party intervenor defendant, Kleinco Residential Construction, LLC.

4. That True Title and Escrow, Inc. is in a position to close the transaction so long as the plaintiff and third-party intervenor provide updated payoffs to ensure that accurate figures are collected and paid at closing.

5. Provided that there are no intervening liens or other title issues that may appear on an interim records search, True Title and Escrow, Inc. stands ready to close the transaction pending appropriate funding by the designated lender.

Further Affiant sayeth not.

By: _____
      David M. Dryer

Subscribed and sworn to before me this 3 day of April, 2013.

_____
Notary Public

My commission expires:

Sept 16 2016

Notary Public
State of Oklahoma
CHRISTOPHER E. BARNES
COMMISSION #04008447
Comm. Exp. 09-16-2016



EXHIBIT
D

223

File No. 12-07-Lynch

July 25, 2012

WS Watson, Inc.
7595 West 118th St. N.
Sperry, OK 74073

Client/Lynch Family Revocable Trust
12925 North 68th West Avenue
Skiatook, OK 74070

To Whom it May Concern:

Pursuant to your request, I have prepared a summary appraisal report of the property captioned in the "Summary of Salient Features" which follows.

This summary appraisal report is intended for use by the lender/client and /or their assigns for a mortgage finance transaction only and not for any other use.  This report has been signed using electronic signature and is protected with acrobat distiller.

The accompanying report is based on a site inspection of improvements, investigation of the subject neighborhood area of influence, and review of sales and cost data for similar properties in this area.

This appraisal has been made with particular attention paid to applicable value-influencing economic conditions and has been processed in accordance with the Uniform Standards of Professional Appraisal Practice {USPAP}, and Title XI FIRREA.

The value conclusions stated herein are as of the effective date as stated in the body of the appraisal, and contingent upon the certification and limiting conditions attached.

The appraiser has the knowledge and experience necessary to competently complete this assignment.

Please do not hesitate to contact me if I can be of additional assistance to you.

Respectfully,

Wilma Watson,
State Certified Appraiser
State of Oklahoma #12789CRA



EXHIBIT

F

224



**APPRAISAL OF REAL PROPERTY**

**LOCATED AT:**
12925 N 68th West Ave
**Please see third page of the URAR**
Skiatook, OK 74070

**FOR:**
Client/Lynch Family Revocable Trust
12925 North 68th West Avenue
Sperry, OK 74073

**AS OF:**
07/25/2012

**BY:**
Wilma Watson

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 12925 N 68th West Ave |
| | Legal Description | **Please see third page of the URAR** |
| | City | Skiatook |
| | County | Osage |
| | State | OK |
| | Zip Code | 74070 |
| | Census Tract | 9400.09 |
| | Map Reference | S31-T22N-R12E |
| **SALES PRICE** | Sale Price | $ |
| | Date of Sale | |
| **CLIENT** | Client | Client/Lynch Family Revocable Trust |
| | Lender | Client/Lynch Family Revocable Trust |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 4,153 |
| | Price per Square Foot | $ |
| | Location | N;Res; |
| | Age | 25 |
| | Condition | C3 |
| | Total Rooms | 8 |
| | Bedrooms | 3 |
| | Baths | 2.1 |
| **APPRAISER** | Appraiser | Wilma Watson |
| | Date of Appraised Value | 07/25/2012 |
| **VALUE** | Final Estimate of Value | $ 850,000 |

226

WS Watson Incorporated

Main File No. 12-07-Lynch| Page #5 of 26

# Uniform Residential Appraisal Report

12789CRA
File # 12-07-Lynch

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 12925 N 68th West Ave | City Skiatook | State OK | Zip Code 74070 |

Borrower Client/Lynch Family Revocable Trust   Owner of Public Record Lynch Family Revocable Trust   County Osage

Legal Description **Please see third page of the URAR**

Assessor's Parcel # 570026488   Tax Year 2011   R.E. Taxes $ 1,239

Neighborhood Name Unplatted   Map Reference S31-T22N-R12E   Census Tract 9400.09

Occupant ☐ Owner ☐ Tenant ☒ Vacant   Special Assessments $ 0   ☐ PUD   HOA $ 0   ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Fair Market Value

Lender/Client Client/Lynch Family Revocable Trust   Address 12925 North 68th West Avenue, Skiatook, OK 74070

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). According to MLS, no listings were noted in the preceding twelve month period.

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE $ (000) | AGE (yrs) | One-Unit 60 % |
| Built-Up ☐ Over 75% ☐ 25-75% ☒ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | Low 0 | 2-4 Unit 0 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 2,950 High 83 | Multi-Family 0 % |

Neighborhood Boundaries   The subject neighborhood is considered to be the rural area located within a 10-mile radius of the subject. The Town of Skiatook is located 40-miles north of the City of Tulsa.

One-Unit Housing: PRICE $(000) 14 Low 0; 2,950 High 83; 170 Pred. 25

Present Land Use %: One-Unit 60%; 2-4 Unit 0%; Multi-Family 0%; Commercial 10%; Other 30%

Neighborhood Description   The area consists primarily single family residential small acreage homesites & undeveloped tracts of land. State Highway 75 is less than 10-miles east of the subject. The subject's improvements conform well to the surrounding properties. Schools, places of worship, medical facilities, shopping and convenience areas are all within a reasonable proximity. No unfavorable neighborhood factors were observed.

Market Conditions (including support for the above conclusions)   According to MLS CMA Report the average CDOM are 65 days. The sale/resale of properties in the neighborhood reflect the stable market condition. Seller concessions consisting of 3-6 points are considered to be typical for this marketing area. Financing is readily available from a variety of sources including FHA & VA. Property values have remained fairly stable in the past.

| Dimensions Please see third page of the URAR | Area 38.68 ac | Shape Irregular | View N;Res; |

Specific Zoning Classification AG-1   Zoning Description Agriculture

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Private | Other (describe) | Public | Private | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Typ. for N-hood | Water | | ☐ | Rural/Typ-N-hood | Street Gravel/Typ. for N-hood | ☒ | |
| Gas | | ☒ | None – Total Electric | Sanitary Sewer | | ☐ | Septic/Typ-N-hood | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 40113C1155K   FEMA Map Date 04/02/2008

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe Utilities are common for the market area.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

The subject is located on a large acreage homesite. Mature shade trees, landscaping and shrubbery are typical for the subjects marketing area and noted as of the day of inspection. Additional on-site improvements include: Open front porch, open rear patio, inground pool and 40' x 75' steel frame insulated shop with concrete flooring, electric and plumbing. No adverse easements or encroachments were observed.

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls Concrete/Good | Floors HdWd/Cpt/Cer/Lam | |
| # of Stories 1.75 | ☐ Full Basement ☐ Partial Basement | Exterior Walls Brick/Steel/Frame/Gd | Walls Drywall/Good | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 0 sq.ft. | Roof Surface Metal/Good | Trim/Finish Softwood/Good | |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | Gutters & Downspouts None | Bath Floor Cer/Lam/Good | |
| Design (Style) Traditional | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type Aluminum/Good | Bath Wainscot Fiberglass/Cer/Gd | |
| Year Built 1987 | Evidence of ☐ Infestation None | Storm Sash/Insulated Double Pane/Good | Car Storage ☒ None | |
| Effective Age (Yrs) 15 | ☐ Dampness ☐ Settlement | Screens Screens/Good | ☐ Driveway # of Cars 0 | |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # 0 | Driveway Surface Concrete/Gravel | |
| ☒ Drop Stair ☐ Stairs | ☐ Other Fuel None | ☒ Fireplace(s) # 1 ☒ Fence Other | ☐ Garage # of Cars 0 | |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck Open ☒ Porch Open | ☐ Carport # of Cars 0 | |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☒ Pool Inground ☒ Other Shop | ☐ Att. ☐ Det. ☐ Built-In | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   8 Rooms   3 Bedrooms   2.1 Bath(s)   4,163 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)   Please see third page of the URAR for Additional Features.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C3;Kitchen-updated-timeframe unknown;Bathrooms-updated-timeframe unknown;Physical depreciation is commensurate with the age and condition. The floor plan is well designed. No functional or external obsolescence was observed. The dwelling appears to have been well maintained and currently in good repair. Within the 40-mile radius the subject's improvements were noted to be of good quality of construction and in good condition as of the day of inspection.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

As of the day of inspection, no physical deficiencies or adverse conditions were observed that would affect the livability, soundness, or structural integrity of the property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

As of the day of inspection the property generally conformed to the neighborhood.

227

Main File No. 12-07-Lynch  Page #6 of 26

12789CRA

## Uniform Residential Appraisal Report

File # 12-07-Lynch

| | | | | |
|---|---|---|---|---|
| There are | 9 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 549,000 | to $ | 1,050,000 |
| There are | 7 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 550,000 | to $ | 1,190,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 12925 N 68th West Ave Skiatook, OK 74070 | 4510 E 490 Rd Claremore, OK 74019 | 12014 E 116th St N Collinsville, OK 74021 | 5603 E 470 Rd Claremore, OK 74019 |
| Proximity to Subject | | 17.92 miles E | 12.72 miles E | 34.07 miles E |
| Sale Price | $ | $ 850,000 | $ 940,000 | $ 1,190,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 178.23 sq.ft. | $ 179.29 sq.ft. | $ 425.61 sq.ft. |
| Data Source(s) | | MLS #1022690 & MDC;DOM 98 | MLS #1127608 & MDC;DOM 151 | MLS #1114143 & MDC;DOM 40 |
| Verification Source(s) | | Visual inspection from the street | Visual inspection from the street | Visual inspection from the street |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth Conv;10000   -10,000 | ArmLth Conv;0   0 | REO Conv;0   0 |
| Date of Sale/Time | | s12/10;Unk | s04/12;Unk | s07/11;Unk |
| Location | N;Res; | N;Res; | N;Res; | N;Res; |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 38.68 ac | 20.08 ac   +37,200 | 6.41 ac   +64,500 | 237.96 ac   -398,600 |
| View | N;Res; | N;Res; | N;Res; | N;Res; |
| Design (Style) | Traditional | Traditional | Traditional | Traditional |
| Quality of Construction | Q3 | Q3 | Q3 | Q3 |
| Actual Age | 25 | 11   0 | 26   0 | 73   0 |
| Condition | C3 | C3 | C3 | C3 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 8   3   2.1 | 11   4   4.0   -4,500 | 11   5   3.2   -4,500 | 7   3   2.0   +1,500 |
| Gross Living Area | 4,153 sq.ft. | 4,769 sq.ft.   -18,500 | 5,243 sq.ft.   -32,700 | 2,796 sq.ft.   +40,700 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | 0sf | 0sf |
| Functional Utility | Average | Average | Average | Average |
| Heating/Cooling | Geo-Thermal | Zoned H&A   0 | Zoned H&A   0 | Central H&A   0 |
| Energy Efficient Items | Standard | Standard | Standard | Standard |
| Garage/Carport | None | G3A   -6,000 | G2A   -4,000 | G2A   -4,000 |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | Porch/Patio | Porch/Patio |
| Additional Improvements | Fireplace | Fireplace | (2) Fireplaces   -1,500 | (2) Fireplaces   -1,500 |
| Additional Improvements | Inground Pool | Inground Pool | None   +5,000 | None   +5,000 |
| Additional Improvements | Shop | Shop | Barn/Shop   -5,000 | Barn/Stable   -5,000 |
| Net Adjustment (Total) | | + ☒ - $   -1,800 | ☒ + ☐ - $   21,800 | ☐ + ☒ - $   -361,900 |
| Adjusted Sale Price of Comparables | | Net Adj   0.2% Gross Adj   9.0% $ 848,200 | Net Adj   2.3% Gross Adj   12.5% $ 961,800 | Net Adj   30.4% Gross Adj   38.3% $ 828,100 |

| | |
|---|---|
| ☒ I ☐ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain | In compliance with Fannie Mae and Freddie |

Mac guidelines a thirty-six month sales history and/or transfer of history concerning the subject and twelve month sales history and/or transfer of history concerning all comparable sales provided in this report was performed. Please see sales grids and information provided grids below.

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)  Per the subject, a thirty-six month search of both County Court House Records and MLS was performed.

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)  Per the comparable sales, provided a thirty-six month search of both County Court House Records and MLS was performed.

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Court House Records/MLS | Court House Records/MLS | Court House Records/MLS | Court House Records/MLS |
| Effective Date of Data Source(s) | 07/25/2012 | 07/25/2012 | 07/25/2012 | 07/25/2012 |

Analysis of prior sale or transfer history of the subject property and comparable sales   In compliance with Fannie Mae and Freddie Mac guidelines a thirty-six month sales history and/or transfer of history concerning the subject and twelve month sales history and/or transfer of history concerning all comparable sales provided in this report was performed.  When the appraiser determines additional information beyond that of Fannie Mae and Freddie Mac requirements this will be reported as well in the following grids and additional comments.  Please see sales grids and information provided in the above sales grids for date, sales price and data source when applicable.

Summary of Sales Comparison Approach   Please see third page of the URAR for the Summary of Sales Comparison Approach.

| | |
|---|---|
| Indicated Value by Sales Comparison Approach $ | 850,000 |

Indicated Value by Sales Comparison Approach $  850,000    Cost Approach (if developed) $  856,596    Income Approach (if developed) $

The Market Data Analysis is generally considered to be the best indicator of value for single-family dwellings.  The Cost Approach provides additional support.  The Income Approach to value is not utilized in this instance due to the subject being occupied as a primary residence.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  See attached certification and statement of limiting conditions.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 850,000 , as of 07/25/2012 , which is the date of inspection and the effective date of this appraisal.

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | UAD Version 9/2011 Page 2 of 6 | Fannie Mae Form 1004 March 2005 |

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

228

Main File No. 12-07-Lynch  Page #7 of 26

## Uniform Residential Appraisal Report

12789CRA
File # 12-07-Lynch

**URAR: Legal Description:**
According to County Court House Records, the subjects legal description is as follows: 31-22-12 TR IN SW-BEG 880' W NE/C SW - W 880'-S
1980'-E 882.9'-N1980' TO BEG LESS 1.316A RD

**URAR: Lot Dimensions:**
According to the subjects legal description, the subjects lot dimensions are as follows:  880', 1980', 882.90', 1980' (Subject to Survey).

**URAR: Additional Features:**
As of the day of inspection, the following features were noted:  Smoke detectors.  Ceiling fans.  Vaulted ceilings.  Hardwood, laminate and ceramic
tile flooring.  Kitchen features include:  granite countertops with tile backsplash and stainless steel appliances.  Recessed lighting.  Built-ins.
Decorative beams.  Wood burning fireplace.

**URAR: Summary of Sales Comparison Approach:**
Sales cited were believed to be the best available in the subject's marketing area.  Sales of up to one year were considered for the sales
comparison analysis with Sale No. 2 reporting to have sold within the past 90 days.  Sale No. 1, 4 & 5 are dated sales and were provided to better
bracket the subjects GLA and location.  Land adjustments were based on $2,000 per acre which is typical for the subjects marketing area.
Adjustments for age were not made due to the subject and comparable having the same effective age.  Sale No. 2, 4, 5 & 6 reported being
superior in location, adjustments are as indicated.  All five sales reported having an inferior or superior half or full bath, an adjustment of $1,500 per
half bath and $3,000 per full bath was made.  All five sales reported having superior car storage, an adjustment of $2,000 per car was made.  Sale
No. 2, 3, 4 & 5 reported having an additional fireplace(s), an adjustment of $1,500 per fireplace was given.  Sale No. 2, 3, 4 & 5 reported having no
inground pool, an adjustment of $5,000 was made.  Sale No. 2, 3 & 4 reported having inferior or superior outbuildings, an adjustment of $5,000
was given.  Adjustments for GLA were based on $30 per square foot which is typical for the subjects marketing area.  Due to the subject being
large in GLA and being located on acreage, it was necessary to exceed the recommended 10% line, 15% net and 25% gross adjustment
guidelines.

**Note:**
The comparable sales and listing photos were provided by MLS.

### COST APPROACH TO VALUE (not required by Fannie Mae)
Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     The opinion of the value of the site was derived
from the allocation method to which several sales of existing homes were analyzed and an allocation was estimated for the site value.  In addition,
recent sales of vacant site sales similar to the subject available within this particular market area were considered.  The local County Assessors
records were reviewed and consideration that was placed on the value of the site by the Assessor was also given significate weight.

| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | 155,000 |
|---|---|---|---|
| Source of cost data  Marshall & Swift & Local Builders | DWELLING          4,163 Sq.Ft. @ $      197.96 | =$ | 822,128 |
| Quality rating from cost service  Good      Effective date of cost data  July, 2012 | None                    0 Sq.Ft. @ $      0 | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Additional Features | =$ | 100,000 |
| Reproduction costs were determined by using the Marshall & Swift | Garage/Carport               Sq.Ft. @ $ | =$ | |
| Residential Costs Handbook in conjunction with the consultation of area | Total Estimate of Cost-New | =$ | 922,128 |
| builders concerning local building costs. | Less    Physical    Functional    External | | |
| | Depreciation    230,532 | =$( | 230,532 ) |
| | Depreciated Cost of Improvements | =$ | 691,596 |
| | "As-is" Value of Site Improvements | =$ | 10,000 |
| Estimated Remaining Economic Life (HUD and VA only)          45 Years | INDICATED VALUE BY COST APPROACH | =$ | 856,596 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)
Estimated Monthly Market Rent $              X Gross Rent Multiplier              = $                    Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)
Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes ☐ No    Unit type(s)  ☐ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases                Total number of units                Total number of units sold
Total number of units rented          Total number of units for sale        Data source(s)
Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes    ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source
Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Page 3 of 6          Fannie Mae Form 1004 March 2005

229

## Uniform Residential Appraisal Report

12789CRA
File # 12-07-Lynch

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc — 1-800-ALAMODE

230

Main File No. 12-07-Lynch Page #9 of 26

## Uniform Residential Appraisal Report

12709CRA
File # 12-07-Lynch

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

2-31

## Uniform Residential Appraisal Report

12789CRA
File # 12-07-Lynch

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Wilma Watson | |
| Signature _Wilma Watson_ | Signature _____ |
| Name  Wilma Watson | Name _____ |
| Company Name  WS Watson, Inc. | Company Name _____ |
| Company Address  7595 West 118th Street North | Company Address _____ |
| Sperry, OK 74073 | |
| Telephone Number  (918) 638-5497 | Telephone Number _____ |
| Email Address  wilmawatson@atlasok.com | Email Address _____ |
| Date of Signature and Report  07/25/2012 | Date of Signature _____ |
| Effective Date of Appraisal  07/25/2012 | State Certification # _____ |
| State Certification #  12789CRA | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  OK | |
| Expiration Date of Certification or License    12/31/2013 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 12925 N 68th West Ave | Date of Inspection _____ |
| Skiatook, OK 74070 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   850,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name  No AMC | COMPARABLE SALES |
| Company Name   Client/Lynch Family Revocable Trust | ☐ Did not inspect exterior of comparable sales from street |
| Company Address   12925 North 68th West Avenue, Skiatook, OK | ☐ Did inspect exterior of comparable sales from street |
| 74070 | Date of Inspection _____ |
| Email Address _____ | |

Form 1004UAD – "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

232

Main File No. 12-07-Lynch | Page #11 of 26

## Uniform Residential Appraisal Report

12789CRA
File # 12-07-Lynch

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 12925 N 68th West Ave Skiatook, OK 74070 | 7211 E 106th St N Owasso, OK 74055 | | 17092 N 161st East Ave Oologah, OK 74053 | | | |
| Proximity to Subject | | 9.71 miles E | | 15.61 miles E | | | |
| Sale Price | $ | $ 1,200,000 | | $ 735,000 | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 222.22 sq.ft. | | $ 113.67 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | MLS #1036994 & MDC;DOM 0 | | MLS #908694 & MDC;DOM 175 | | | |
| Verification Source(s) | | Visual inspection from the street | | Visual inspection from the street | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | | |
| Concessions | | Conv;0 | 0 | Conv;0 | 0 | | |
| Date of Sale/Time | | s12/10;Unk | | s10/09;Unk | | | |
| Location | N;Res; | N;Res; | | N;Res; | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 38.68 ac | 19.75 ac | +37,900 | 50.10 ac | -22,800 | | |
| View | N;Res; | N;Res; | | N;Res; | | | |
| Design (Style) | Traditional | Traditional | | Traditional | | | |
| Quality of Construction | Q3 | Q3 | | Q3 | | | |
| Actual Age | 25 | 2 | 0 | 10 | 0 | | |
| Condition | C3 | C1 | 0 | C3 | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8  3  2.1 | 9  4  4.1 | -6,000 | 10  5  3.1 | -3,000 | | |
| Gross Living Area | 4,153 sq.ft. | 5,400 sq.ft. | -37,400 | 6,466 sq.ft. | -69,400 | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | 0sf | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | Geo-Thermal | Central H&A | 0 | Zoned H&A | 0 | | |
| Energy Efficient Items | Standard | Standard | | Standard | | | |
| Garage/Carport | None | G3A | -6,000 | G4A | -8,000 | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | | |
| Additional Improvements | Fireplace | (3) Fireplaces | -3,000 | (3) Fireplaces | -3,000 | | |
| Additional Improvements | Inground Pool | None | +5,000 | None | +5,000 | | |
| Additional Improvements | Shop | None | +5,000 | Barn | 0 | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -4,500 | ☐ + ☒ - | $ -101,200 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 0.4 % | | Net Adj. 13.8 % | | Net Adj. % | |
| of Comparables | | Gross Adj. 8.4 % | $ 1,195,500 | Gross Adj. 15.1 % | $ 633,800 | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Court House Records/MLS | Court House Records/MLS | Court House Records/MLS | |
| Effective Date of Data Source(s) | 07/25/2012 | 07/25/2012 | 07/25/2012 | |

Analysis of prior sale or transfer history of the subject property and comparable sales   In compliance with Fannie Mae and Freddie Mac guidelines a thirty-six month sales history and/or transfer of history concerning the subject and twelve month sales history and/or transfer of history concerning all comparable sales provided in this report was performed.  When the appraiser determines additional information beyond that of Fannie Mae and Freddie Mac requirements this will be reported as well in the following grids and additional comments.  Please see sales grids and information provided in the above sales grids for date, sales price and data source when applicable.

Analysis/Comments   Two additional dated comparable sales were provided to the market analysis.  Sales cited were believed to be the best available in the subject's marketing area.  Sales of up to one year were considered for the sales comparison analysis with Sale No. 2 reporting to have sold within the past 90 days.  Sale No. 1, 4 & 5 are dated sales and were provided to better bracket the subjects GLA and location.  Land adjustments were based on $2,000 per acre which is typical for the subjects marketing area.  Adjustments for age were not made due to the subject and comparable having the same effective age.  Sale No. 2, 4, 5 & 6 reported being superior in location, adjustments are as indicated.  All five sales reported having an inferior or superior half or full bath, an adjustment of $1,500 per half bath and $3,000 per full bath was made.  All five sales reported having superior car storage, an adjustment of $2,000 per car was made.  Sale No. 2, 3, 4 & 5 reported having an additional fireplace(s), an adjustment of $1,500 per fireplace was given.  Sale No. 2, 3, 4 & 5 reported having no inground pool, an adjustment of $5,000 was made.  Sale No. 2, 3 & 4 reported having inferior or superior outbuildings, an adjustment of $5,000 was given.  Adjustments for GLA were based on $30 per square foot which is typical for the subjects marketing area.  Due to the subject being large in GLA and being located on an acreage, it was necessary to exceed the recommended 10% line, 15% net and 25% gross adjustment guidelines.

Freddie Mac Form 70 March 2005                    UAD Version 9/2011                    Fannie Mae Form 1004 March 2005

Form 1004UAD (AC) --- "WinTOTAL" appraisal software by a la mode, inc. --- 1-800-ALAMODE

233

## Additional Listings

12789CRA
File # 12-07-Lynch

| FEATURE | SUBJECT | LISTING # 1 | | LISTING # 2 | | LISTING # 3 | |
|---|---|---|---|---|---|---|---|
| Address 12925 N 68th West Ave | | 8212 W 118th St N | | | | | |
| Skiatook, OK 74070 | | Sperry, OK 74073 | | | | | |
| Proximity to Subject | | 0.78 miles SW | | | | | |
| List Price | $ | $ 650,000 | | $ | | $ | |
| List Price/Gross Liv. Area | $ sq.ft. | $ 163.81 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Last Price Revision Date | | 04/03/2012 - Active Listing | | | | | |
| Data Source(s) | | MLS #1210592 & MDC | | | | | |
| Verification Source(s) | | Visual Inspection from the street | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | | | | | | |
| Concessions | | | | | | | |
| Days on Market | | 113 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 38.68 ac | 21.00 ac | +35,400 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | Traditional | Traditional | | | | | |
| Quality of Construction | Q3 | Q3 | | | | | |
| Actual Age | 25 | 13 | 0 | | | | |
| Condition | C3 | C3 | | | | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 8 | 3 | 2.1 | 9 | 4 | 3.0 | -1,500 | | | | | | | |
| Gross Living Area | | 4.163 sq.ft. | | 3,968 sq.ft. | +5,600 | | sq.ft. | | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | Geo-Thermal | Zoned H&A | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | |
| Garage/Carport | None | G2D | -4,000 | | | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | | | | |
| Additional Improvements | Fireplace | Fireplace | | | | | |
| Additional Improvements | Inground Pool | Inground Pool | | | | | |
| Additional Improvements | Shop | Barn/Stable | -5,000 | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 30,500 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted List Price | | Net 4.7 % | | Net % | | Net % | |
| of Comparables | | Gross 7.9 % | $ 680,500 | Gross % | $ | Gross % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | LISTING # 1 | LISTING # 2 | LISTING # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Court House Records/MLS | Court House Records/MLS | | |
| Effective Date of Data Source(s) | 07/25/2012 | 07/25/2012 | | |

Comments:   A current active listing from the subjects marketing area was provided to lend support to the market analysis.  Adjustments are as indicated.

March 2005

234

Main File No. 12-07-Lynch  Page #13 of 26

### Supplemental Addendum

File No. 12-07-Lynch

| Client | Client/Lynch Family Revocable Trust | | | | |
|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | |
| City | Skiatook | County | Osage | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | |

## Reasoning for Comparable Sales Provided:

**Research Criteria:**
Upon researching the subject property the appraiser paid special attention to bracket the following criteria as it pertains to the subject: subjects GLA, amenities, quality of construction, quality of condition, year of construction and location. The following comparable sales had to report one or more of the aforementioned criteria to have been considered and included in this report. Though sales within 90 days are preferred and one year is acceptable and required by by the lender for Sale grids 1-3. Under USPAP the appraiser "must" take into consideration all data in forming an opinion of value.

**Location:**
I have considered the following requirements in researching the afore mentioned appraisal. All comparable sales cited were located within a 40-mile radius of the subject, therefore reflecting the best indication of value. Emphasis was placed on location using sales from the subjects marketing area. However, sales date was considered in my research. Location is the best indication of value. Sales of up to one year were considered for the sales comparison analysis which is typical appraisal practice and taught in the Market Analysis Classes required for licensing.

**URAR: Summary of Sales Comparison Approach:**
Sales cited were believed to be the best available in the subject's marketing area. Sales of up to one year were considered for the sales comparison analysis with Sale No. 2 reporting to have sold within the past 90 days. Sale No. 1, 4 & 5 are dated sales and were provided to better bracket the subjects GLA and location. Land adjustments were based on $2,000 per acre which is typical for the subjects marketing area. Adjustments for age were not made due to the subject and comparable having the same effective age. Sale No. 2, 4, 5 & 6 reported being superior in location, adjustments are as indicated. All five sales reported having an inferior or superior half or full bath, an adjustment of $1,500 per half bath and $3,000 per full bath was made. All five sales reported having superior car storage, an adjustment of $2,000 per car was made. Sale No. 2, 3, 4 & 5 reported having an additional fireplace(s), an adjustment of $1,500 per fireplace was given. Sale No. 2, 3, 4 & 5 reported having no inground pool, an adjustment of $5,000 was made. Sale No. 2, 3 & 4 reported having inferior or superior outbuildings, an adjustment of $5,000 was given. Adjustments for GLA were based on $30 per square foot which is typical for the subjects marketing area. Due to the subject being large in GLA and being located on acreage, it was necessary to exceed the recommended 10% line, 15% net and 25% gross adjustment guidelines.

**Comparable Sale No. 1:**
Sale No. 1 is a dated sale and was provided to bracket the subject's GLA, construction, amenities, lot size and lot location. Located 17.92 miles from the subject.

**Comparable Sale No. 2:**
Sale No. 2 is similar in GLA and was provided to bracket the subject's construction, amenities and lot location. Brackets the subjects age within 1 year. Located 12.72 miles from the subject. Sold within the past 90 days.

**Comparable Sale No. 3:**
Sale No. 3 is similar in GLA and was provided to bracket the subject's construction, amenities and lot location. Located 34.07 miles from the subject.

**Comparable Sale No. 4:**
Sale No. 4 is a dated sale and was provided to bracket the subject's GLA, construction, amenities, lot size and lot location. Located 9.71 miles from the subject.

**Comparable Sale No. 5:**
Sale No. 5 is a dated sale and was provided to bracket the subject's GLA, construction, amenities, lot size and lot location. Located 15.61 miles from the subject.

235

**Building Sketch**

| Client | Client/Lynch Family Revocable Trust | | | | |
|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | |
| City | Skiatook | County | Osago | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | |



236

Main File No. 12-07-Lynch| Page #15 of 26

## Subject Exterior Photograph Addendum

| | | | | | |
|---|---|---|---|---|---|
| Client | Client/Lynch Family Revocable Trust | | | | |
| Property Address | 12925 N 68th West Ave | | | | |
| City | Skiatook | County Osage | | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | |



**Subject Front View (2)**



**Subject Rear View**



**Subject Side View (1)**



**Subject Side View (2)**



**Subject Street View (1)**



**Subject Street View (2)**

237

## Subject Interior Photograph Addendum

| Client | Client/Lynch Family Revocable Trust | | | | |
|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | |
| City | Skiatook | County | Osage | State | OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | |



**Kitchen**



**Dining Room**



**Living**



**Den**



**Master Bedroom**



**Additional Bedroom**

238

Main File No. 12-07-Lynch| Page #17 of 26

### Subject Interior and Exterior Photograph Addendum

| Client | Client/Lynch Family Revocable Trust | | | | |
|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | |
| City | Skiatook | County Osage | | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | |



**Master Full Bath**



**Master Full Bath**



**Additional Full Bath**



**Half Bath**



**Shop**



**Fiberglass Pool**

Form PICSIX2 — "WinTOTAL" appraisal software by a la mode, inc — 1-800-ALAMODE

239

Main File No. 12-07-Lynch  Page #18 of 26

### Comparable Photo Page

| Client | Client/Lynch Family Revocable Trust | | | | |
|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | |
| City | Skiatook | County Osage | | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | |



**Comparable 1**
4510 E 490 Rd
Prox. to Subj. 17.92 miles E
Sales Price 850,000
G.L.A. 4,769
Tot. Rooms 11
Tot. Bedrms. 4
Tot. Bathrms. 4.0
Location N;Res;
View N;Res;
Site 20.06 ac
Quality Q3
Age 11



**Comparable 2**
12014 E 116th St N
Prox. to Subj. 12.72 miles E
Sales Price 940,000
G.L.A. 5,243
Tot. Rooms 11
Tot. Bedrms. 5
Tot. Bathrms. 3.2
Location N;Res;
View N;Res;
Site 6.41 ac
Quality Q3
Age 26



**Comparable 3**
5603 E 470 Rd
Prox. to Subj. 34.07 miles E
Sales Price 1,190,000
G.L.A. 2,798
Tot. Rooms 7
Tot. Bedrms. 3
Tot. Bathrms. 2.0
Location N;Res;
View N;Res;
Site 237.96 ac
Quality Q3
Age 73

240

## Comparable Photo Page

| | |
|---|---|
| Client | Client/Lynch Family Revocable Trust |
| Property Address | 12925 N 68th West Ave |
| City | Skiatook |
| Lender | Client/Lynch Family Revocable Trust |

| | | | |
|---|---|---|---|
| | County Osage | State OK | Zip Code 74070 |



### Comparable 4
7211 E 106th St N
Prox. to Subj   9.71 miles E
Sales Price   1,200,000
G.L.A.   5,400
Tot. Rooms   9
Tot. Bedrms   4
Tot. Bathrms.   4.1
Location   N;Res;
View   N;Res;
Site   19.75 ac
Quality   Q3
Age   2



© 2009 NORES

### Comparable 5
17092 N 161st East Ave
Prox. to Subj   15.61 miles E
Sales Price   735,000
G.L.A.   6,466
Tot. Rooms   10
Tot. Bedrms   5
Tot. Bathrms.   3.1
Location   N;Res;
View   N;Res;
Site   50.10 ac
Quality   Q3
Age   10

### Comparable 6
Prox. to Subj
Sales Price
G.L.A.
Tot. Rooms
Tot. Bedrms.
Tot. Bathrms
Location
View
Site
Quality
Age

### Listing Photo Page

| Client | Client/Lynch Family Revocable Trust | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | | | |
| City | Skiatook | County | Osage | | State | OK | Zip Code | 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | | | |

**Listing 1**



| | |
|---|---|
| | 8212 W 116th St N |
| Prox. to Subj. | 0.78 miles SW |
| List Price | 650,000 |
| D.O.M. | 113 |
| G.L.A. | 3,968 |
| Tot. Rooms | 9 |
| Tot. Bedrms. | 4 |
| Tot. Bathrms | 3.0 |
| Age | 13 |

**Listing 2**

| | |
|---|---|
| Prox. to Subj. | |
| List Price | |
| D.O.M. | |
| G.L.A. | |
| Tot. Rooms | |
| Tot. Bedrms. | |
| Tot. Bathrms | |
| Age | |

**Listing 3**

| | |
|---|---|
| Prox. to Subj. | |
| List Price | |
| D.O.M. | |
| G.L.A. | |
| Tot. Rooms | |
| Tot. Bedrms. | |
| Tot. Bathrms | |
| Age | |

242

## Subject, Comparable Sales & Listing Location Map

| Client | Client/Lynch Family Revocable Trust | | | |
|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | |
| City | Skiatook | County Osage | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | |



243

Main File No. 12-07-Lynch  Page #22 of 26

## Subject Flood Location Map

| Client | Client/Lynch Family Revocable Trust | | | | |
|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | |
| City | Skiatook | County | Osage | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | |



**InterFlood**
by a la mode
www.interflood.com • 1-800-252-6633

**Prepared for:**
WS Watson Incorporated

12925 N 68th West Ave
Skiatook, OK 74070

Subject
12925 N 68th West Ave

JOINS PANEL 1155

**FLOODSCAPE**

Flood Hazards Map

Map Number
40113C1155K

Effective Date
April 2, 2008

Powered by FloodSource
877.77.FLOOD
www.floodsource.com

© 1999-2012 SourceProse and/or FloodSource Corporations. All rights reserved. Patents 6,631,326 and 6,678,615. Other patents pending.  For info: info@floodsource.com.

244

Main File No. 12-07-Lynch  Page #23 of 26

### Subject Aerial Location Map

| Client | Client/Lynch Family Revocable Trust | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | | |
| City | Skiatook | County | Osage | State | OK | Zip Code | 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. 12-07-Lynch  Page #24 of 26

## USPAP COMPLIANCE ADDENDUM

File No.: 12-07-Lynch

| Borrower  Client/Lynch Family Revocable Trust | | | Order # | |
|---|---|---|---|---|
| Property Address  12925 N 66th West Ave | | | | |
| City  Skiatook | County  Osage | State  OK | | Zip Code  74070 |
| Lender/Client  Client/Lynch Family Revocable Trust | | | Client Reference # | |

*Only those items checked "X" apply to this report.*

### PURPOSE, FUNCTION AND INTENDED USE OF THE APPRAISAL

☒ The purpose of the appraisal is to provide an opinion of market value of the subject property as defined in this report, on behalf of the appraisal company facilitating the assignment for the referenced client as the intended user of the report. The only function of the appraisal is to assist the client mentioned in this report in evaluating the subject property for lending purposes. The use of this appraisal by anyone other than the stated intended user, or for any other use than the stated intended use, is prohibited.

☐ The purpose of the appraisal is to provide an opinion of market value of the subject property as defined in this report, on behalf of the appraisal company facilitating the assignment for the referenced client as the intended user of the report. The only function of the appraisal is to assist the client mentioned in this report in evaluating the subject property for Real Estate Owned (REO) purposes. The use of this appraisal by anyone other than the stated intended user, or for any other use than the stated intended use, is prohibited.

☐ The purpose of the appraisal is to _____, on behalf of the appraisal company facilitating the assignment for the referenced client as the intended user of this report. The only function of the appraisal is to assist the client mentioned in this report in evaluating the subject property for _____. The use of this appraisal by anyone other than the stated intended user, or for any other use than the stated intended use is prohibited

### TYPE OF APPRAISAL AND APPRAISAL REPORT

☒ This is a ___Complete___ Appraisal written in a ___Summary___ Report format and the USPAP Departure Rule has not been invoked.
☐ This is a Limited Appraisal written in a _____ Report format and the USPAP Departure Rule has been invoked as disclosed in the body or addenda of the report. The client has agreed that a Limited Appraisal is sufficient for its purposes.

### SCOPE (EXTENT) OF REPORT

☒ the appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales, listings, and/or rentals within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The original source is presented first. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion. The extent of analysis applied to this assignment may be further imparted within the report, the Appraiser's Certification below and/or any other Statement of Limiting Conditions and Appraiser's Certification such as may be utilized within the Freddie Mac form 439 or Fannie Mae form 1004b (dated 6/93), when applicable.

### MARKETING TIME AND EXPOSURE TIME FOR THE SUBJECT PROPERTY

☒ A reasonable marketing time for the subject property is ___90-180___ day(s) utilizing market conditions pertinent to the appraisal assignment
☒ A reasonable exposure time for the subject property is ___90-180___ day(s) utilizing market conditions pertinent to the appraisal assignment

### APPRAISER'S CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The report analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved, unless otherwise stated within the report.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
- I have ☒ or have not ☐ made a personal inspection of the property that is the subject of this report. (If more than one person signs this report, this certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)
- No one provided significant professional assistance to the person signing this report. (If there are exceptions, the name of each individual providing significant professional assistance must be stated.)

*NOTE: In the case of any conflict with a client provided certification (i.e., Fannie Mae or Freddie Mac), this revised certification shall take precedence*

### APPRAISER'S AND SUPERVISORY APPRAISER'S SIGNATURE

| APPRAISER | SUPERVISORY-APPRAISER  (only if required) |
|---|---|
| Signature:  *Wilma Watson* | Signature: _____ |
| Name:  Wilma Watson | Name: _____ |
| Date of Report (Inspection):  07/25/2012 | Date of Report (Inspection): _____ |
| State License/Certification #:  12789CRA | State License/Certification #: _____ |
| State of License/Certification:  OK | State of License/Certification: _____ |
| Expiration Date of License/Certification:  12/31/2013 | Expiration Date of License/Certification: _____ |
| | ☐ Did inspect subject property   ☐ Inspected Comparables |
| | ☐ Interior & Exterior   ☐ Interior & Exterior |
| | ☐ Exterior only   ☐ Exterior only |

USPAP Compliance Addendum - 4/99

WS Watson Incorporated
Form FAUCA -— "WinTOTAL" appraisal software by a la mode, Inc. -— 1-800-ALAMODE

246

### Oklahoma Appraisal License

| Client | Client/Lynch Family Revocable Trust | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 12925 N 68th West Ave | | | | | |
| City | Skiatook | | County Osage | | State OK | Zip Code 74070 |
| Lender | Client/Lynch Family Revocable Trust | | | | | |



*State of Oklahoma*

*Kim Holland, Insurance Commissioner*

## Oklahoma Real Estate Appraiser Board

*This is to certify that*

# Wilma S. Watson

*has complied with the provisions of the Oklahoma Real Estate Appraisers Act to transact business as a Certified Residential Real Estate Appraiser in the State of Oklahoma.*

*In Witness Whereof, I have hereunto set my hand and caused the seal of my office to be affixed at the City of Oklahoma City, State of Oklahoma, this 29th day of November A.D. 2010.*

*Kim Holland, Insurance Commissioner*
*Chairperson, Oklahoma Real Estate Appraiser Board*

*Members, Oklahoma Real Estate Appraiser Board*

*Expires 12/31/2013*          *Oklahoma Appraiser Number 12789CRA*

247

### E & O Insurance

| | |
|---|---|
| Client | Client/Lynch Family Revocable Trust |
| Property Address | 12925 N 66th West Ave |
| City | Skiatook | County | Osage | State | OK | Zip Code | 74070 |
| Lender | Client/Lynch Family Revocable Trust |



**Real Estate Appraisers Professional Liability**

Liberty
Surplus Insurance
Corporation..
Member of Liberty Mutual Group

| Date Issued | Policy Number | Previous Policy Number |
|---|---|---|
| 11/30/2011 | LS1011513-003 | LS1011513-002 |

## LIBERTY SURPLUS INSURANCE CORPORATION
(A Stock Insurance Company, hereinafter the "Company")
175 Berkeley Street
Boston, MA 02117

THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY.

### DECLARATIONS

Item

1. Customer ID: 163450
   Named Insured:
   WATSON, WS INC.
   Wilea Watson
   7595 N. 116th St. E.
   Sperry, OK 74073

2. Policy Period:
   From: 12/18/2011    To: 12/18/2012
   12:01 A.M. Standard Time at the address stated in Item 1.

3. Deductible: $1,000    Each Claim

4. Retroactive Date: 12/18/2009

5. Inception Date: 12/18/2009

6. Limits of Liability:
   A. $300,000    Each Claim
   B. $300,000    Aggregate

7. Mail All Notices to Agent:
   LIA Administrators & Insurance Services
   1600 Anacapa Street
   Santa Barbara, California 93101
   (805) 963-6624;    Fax: (805) 962-0652

8. Annual Premium:    $615.00
   +    $36.90 Surplus Lines Tax

9. Number of Appraisers:    1

10. Forms attached at issue:    LIA002S (10/11)  LIA012 (08/11)  SC-2 (9/07)

This contract, procured as surplus line coverage, is not subject to the protection of any guaranty association in the event of liquidation or receivership of the insurer.

WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

The Limit of Liability for Each Claim and in the Aggregate is reduced by Damages and Claims Expenses as defined in the Policy.

This Declarations Page together with the completed and signed Policy Application including all attachments and exhibits thereto, and the Real Estate Appraisers Professional Liability Insurance Policy shall constitute the contract between the Named Insured and the Company.

By _Darlene Goff_
Authorized Signature

LIA001S (04/10)

248

**IN THE DISTRICT COURT IN AND FOR OSAGE COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| BOKF, N.A. D/B/A BANK OF OKLAHOMA, SUCESSOR BY MERGER TO BANK OF OKLAHOMA, N.A., | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CJ-2012-37 |
| | ) | Judge Gambill |
| STEPHEN NICHOLAS LYNCH a/k/a NICK LYNCH and GWENNA KAY LYNCH a/k/a GWENNA LYNCH a/k/a GWENNA KAY MORRISON a/k/a GWENNA KAY MORRISON LYNCH, Husband and Wife, et al., | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF WILMA WATSON

STATE OF OKLAHOMA    )
                                        )   ss.
COUNTY OF _____ )

I, Wilma Watson, of lawful age, being first duly sworn upon oath, depose and state as follows:

1.    That I have personal knowledge of the matters hereinafter set forth.

2.    I am employed by WS Watson, Inc., located at 7595 West 118th Street North, Sperry, Oklahoma, 74073.

3.    I am a State Certified Appraiser for the State of Oklahoma, Certification No. 12789CRA.

4.    On or about July 25, 2012, I did an appraisal for the property located at 12925 North 68th West Avenue, Skiatook, OK 74070 ("Property").

-1-



249

5.      The appraisal was a full scope appraisal based on a site inspection of the interior and exterior, and developed an opinion of the fair market value based off similar comparable sales which included the Sperry, Skiatook, Owasso, and Collinsville areas.

6.      At the Lynch Family Revocable Trust's request, today, April 3, 2013, I was asked to revisit the subject marketing area, researching current and past sales in the subject marketing areas and on this date hereby standby the fair market value of the property at $850,000.00, within a reasonable margin.

Further, Affiant saith not.

Dated this _3_ day of _April_, 2013.

_Wilma Watson_
Wilma Watson

Subscribed and sworn to before me this _3rd_ day of _April_, 2013.

_Joanne N Southall_
NOTARY PUBLIC, Commission # _10005398_

My commission expires:

_7/6/14_

Notary Public Oklahoma
OFFICIAL SEAL
JOANNE N. SOUTHALL
Comm. #10005398
Expires July 6, 2014

P:\WPDATA\RE\lynch, nick\pldgs\affidavit.watson.wpd

-2-

250