UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTIRCT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEPHEN NICOLAS LYNCH and GWENNA | ) | |
| KAY LYNCH, | ) | Case No. 11-12457-M |
| Debtors. | ) | (Chapter 7) |
| _____ | ) | |
| | ) | |
| STEPHEN NICHOLAS LYNCH, | ) | |
| | ) | |
| Plaintiff/Debtor, | ) | |
| | ) | |
| v. | ) | Adv. No. 14-01059-M |
| | ) | |
| KENNETH K. KLEIN; JUDI KLEIN; KRISTEN | ) | |
| KLEIN DAFFERN; ERIC M. DAFFERN; | ) | |
| KLEINCO RESIDENTIAL CONSTRUCTION, | ) | |
| LLC, an Oklahoma Limited Liability Company; | ) | |
| ROBERT B. SARTIN; PATRICK J. MALLOY, III; | ) | |
| ROBERT BURTON, IV; BOKF, N.A.; SCOTT F. | ) | |
| LEHMAN; CFR, INC.; WESTPORT INSURANCE | ) | |
| CORPORATION; BRUCE A. McKENNA; | ) | |
| CHRISTOPHER PETTET; VALERIE MITCHELL; | ) | |
| DISTRICT COURT IN FOR OSAGE COUNTY, | ) | |
| OKLAHOMA; DISTRICT COURT FOR | ) | |
| TULSA COUNTY, OKLAHOMA, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS, CFR,
INC., WESTPORT INSURANCE CORPORATION, AND BRUCE McKENNA**

s/ *Bruce A. McKenna*
Bruce A. McKenna
McKenna & Prescott, PLLC
5801 E. 41st Street
Suite 501
Tulsa, OK 74135
*Attorneys for CFR, Inc., Westport Insurance
Corporation, and Bruce A. McKenna*

## TABLE OF CONTENTS

Table of Contents ........................................................................................................................... i

Table of Authorities......................................................................................................................ii

I.   Introductory Statement.............................................................................................................. 1

II.  Pertinent Procedural Background ............................................................................................ 1

III. Summary of the Allegations Against the Movants.................................................................. 5

IV.  There has Been no Malicious Prosecution of the Plaintiff ...................................................... 7

V.   As a Matter of Law, There was no Abuse of Process by the Movants ................................... 8

VI.  There is no Fraud and it Certainly was not Properly Pleaded .............................................. 10

VII. The Automatic Stay was not Violated: The Rights of CFR and Westport are Derived from Kleinco's
     Recovery ............................................................................................................................... 11

     A.  Kleinco's Interest in and to the Proceeds from the Sheriff's Sale was Superior to the Interests of
         CFR and Westport and their Receipt of a Part of the Funds did not Deprive the Debtors or the
         Estate of any Monies.................................................................................................. 11
     B.  Principles of Equity Compel the Conclusion that there was no Violation of the Automatic
         Stay……………………………………………………………………………… 12

VIII. There Was No Conspiracy and Certainly None has been Properly Alleged....................... 15

IX.  Further Amendment to the Complaint Would be Futile and Should be Denied................... 17

X.   Miscellaneous Considerations……………………………………………………… 18

XI.  Conclusion ............................................................................................................................ 18

## TABLE OF AUTHORITIES

Precedent:

*Anderson v. Suiters, 499 F.3d 1228* (10th Cir. 2007)....................................................................17

*Crabtree by and through Crabtree v. Muchmore,* 904 F.2d 1475 (10th Cir. 1990)........................15

*Dunnington v. Loeser,* 150 P. 874 (Okla. 1915)..............................................................................7

*Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2df 371 (10th Cir. 1990) ....................................13

*Empire Oil & Ref. Co. v. Williams,* 86 P.2d 291 (Okla. 1939)........................................................7

*Equity Fire & Cas. Co. v. Youngblood,* 927 P.2d 572 (1996) .......................................................11

*Erikson v. Pawnee Cty.,* 263 F.3d 1151 (10th Cir. 2001), *cert. denied,* 122 S. Ct. 1438 (2002) ....8

Gaylord Entertainment Co. v. Thompson, 958 P.2d 128 (Okla. 1998)............................................15

*Greenberg v. Wolfberg,* 890 P.2d 895 (Okla. 1994), *answer to cert. question conformed to* 54 F.3d 787
(10th Cir. 1995), *cert. denied,* 116 S. Ct. 1847 (1996) .............................................................7

*In re Calder,* 907 F.2d 953 (10th Cir. 1990) ..........................................................................13, 14

*In re Downing,* 141 B.R. 748 (N.D. Okla. 1992)..........................................................12, 13, 14

*In re Smith Corset Shops, Inc.* 696 F.2d 971 (1st Cir. 1982) ........................................................13

*Jablonski v. Pan Am. World Airways, Inc.,* 8963 F.2d 289 (3d Cir. 1988), citing *Foman v. Davis,* 83
S. Ct. 227 (1962) ...................................................................................................................18

*Matthews v. Rosene,* 739 F.2d 249 (7th Cir. 1984) ........................................................................13

*Meyers v. Basic Ideal Inds., Inc.,* 940 F.2d 1379 (10th Cir. 1991), *cert. denied,* 112 S. Ct. 935
(1992) .......................................................................................................................................8

*Norton v. Liddell, 620 F.2d 1375* (10th Cir. 1980) .......................................................................16

*Oklahoma Nat. Gas Co. v. Mahan & Rowsey, Inc.,* 48 B.R. 767 (W.D. Okla. 1985), *aff'd,* 786 F.2d
1004 (10th Cir.), *cert. denied,* 107 S. Ct. 185 (1966)................................................................8

*Onyx Investments, LLC v. Foster,* 2007 WL 1347696 (D. Kan.) ..................................................14

*Pearl v. Oklahoma City,* 145 P.2d 400 (Okla. 1943) ....................................................................16

*Peterson v. Underwood*, 220 P.3d 1158 (Okla. Civ. App. 2008)......................................................7

*Reeds v. Walker,* 157 P.3d 100 (2006)....................................................................................11, 12

*Shadid v. Monsour*, 746 P.2d 685 (Okla. Civ. App. 1997) ...........................................................15

*Shaffer v. Cook,* 634 F.2d 1259 (10th Cir. 1980), *cert. denied,* 101 S. Ct. 2316 (1981) ..............16

*U.S. v. Warren Clinic, Inc.,* 2014 WL 5704884 (N.D. Okla.).................................................10, 11

*Weston v. Acme Tool, Inc.,* 441 P.2d 959 (Okla. 1968) ...............................................................10

I.      <u>Introductory Statement</u>.

The Amended Complaint blatantly ignores well established principles of procedural and substantive law. CFR, Inc., Westport Insurance Corporation, and Bruce A. McKenna ("Movants") are hardly mentioned (indeed, are specifically mentioned in only twelve (12) of the 211 paragraphs) in the Amended Complaint.

At best, the Amended Complaint is an impermissible collateral attack on orders and judgments of this Court and the District Court of Osage County which is nothing more than a desperate, scattershot, ill-conceived, and misguided attempt to undo that which should not and cannot be undone. The Amended Complaint should be dismissed and the Plaintiff should be denied any opportunity to re-plead.

II.     <u>Pertinent Procedural Background</u>.

Prior to the filing of the Plaintiff's bankruptcy, the Movants were granted permission to intervene in Tulsa County litigation commenced by Kleinco Residential Construction, LLC ("Kleinco"), to recover the monies that Gwenna Lynch ("Gwenna") and this Plaintiff had embezzled from Kleinco (the "Tulsa County Litigation"). <u>Exhibit 1</u>.[1]  In that case, the Movants sought to intervene to collect from this Plaintiff and Gwenna monies paid to Kleinco that represented insurance policy benefits for a crime and dishonesty policy that, had it been renewed by CFR (Kleinco's independent insurance agent), would have been "triggered" by Gwenna's misconduct. <u>Exhibit 2</u>. The intervention papers were filed on July 25, 2011, thirty (30) days prior to the filing of the Bankruptcy Petition. *Compare* <u>Exhibit 1 with N.D. Okla. Bkrptcy. case # 11-12457-M, Doc. # 1</u>. **Neither this Plaintiff nor Gwenna filed any papers opposing the intervention**. The Movants are not identified as recipients of the Notice of Bankruptcy. <u>Exhibit 3</u>. The Tulsa County Litigation OSCN docket sheet reflects that the Petition in Intervention was not pursued by the Movants. <u>Exhibit 1</u>.

Subsequent to the filing of the debtors' bankruptcy, on January 25, 2012, Bank of Oklahoma ("BOKF") obtained relief from the automatic stay. <u>Exhibit 4</u>. On February 14, 2012, BOKF filed an action

---

[1] This Court is requested to take judicial notice of the entirety of the contents of the Tulsa County District Court docket sheet. <u>Exhibit 1</u>.

seeking to foreclose on the debtors' residence in Osage County (the "Foreclosure Case").[2] On July 18, 2012, Kleinco obtained an Order of this Court, Doc. # 116, granting it relief from the automatic stay.  Exhibit 6. The Order recites that Kleinco sought relief from the automatic stay to "allow it to preserve and protect its interest in the constructive trust lien claim against the Real Property … or in the sales proceeds of the real Property after the first mortgage is paid." *Id.* at ¶ 11. Also on July 18, 2012, Kleinco obtained an Order from this Court, Doc. # 118, that held that the "Debtors' claim of exemption in  the Real Property is found to be of no legal effect as to a constructive lien claim of Kleinco, if such a constructive trust claim is established in a court of competent jurisdiction." Exhibit 7 at p. 4. This Court found that upon the imposition of a constructive trust, "the Real Property is not property of the bankruptcy estate. …" *Id.* at ¶ 14 (emphasis supplied). On December 3, 2012, Kleinco obtained in this Court an "*Agreed Judgment*" against this Plaintiff and Gwenna in the amount of $1,078, 064.33. Exhibit 8. On December 7, 2012, Kleinco obtained a "*Consent Journal Entry of Judgment and Decree of Foreclosure*" in the Foreclosure Case which imposed a constructive trust in the amount of $157,811.16 against the Real Property. Exhibit 9. As a result of the foregoing, the exemption claim of this Plaintiff and Gwenna in and to the Real Property located in Osage County was held to be of no legal effect as to Kleinco's interest found in the constructive trust.

On January 28, 2013, after learning of the underlying bankruptcy, the Movants filed their Application seeking to intervene in the Foreclosure Case. Exhibit 10. On February 15, 2013, over Gwenna's oral objection at the hearing that she had only just received the Application to Intervene, Exhibit 5, CFR and Westport were allowed to intervene in the Foreclosure Case. The Osage County docket sheet minute entry reflects that ***Gwenna's objection was not in any way based on or related to the bankruptcy***. *Id.* The docket sheet entry on that date reflects that "BOK & [the Movants] stipulate that sale may proceed and priorities determined later." *Id.* The Petition in Intervention included allegations directly related to the rights of CFR and Westport

---

[2] The Osage County District Court Docket Sheet is appended hereto as Exhibit 5 and the Court is requested to take judicial notice of the entirety of its contents.

to share in whatever monies might be recovered by Kleinco for Gwenna's embezzlement that resulted from (a) this Court's entry of the agreed upon non-dischargeable judgment to which this Plaintiff and Gwenna had agreed and (b) the state court consent judgment *vis–a–vis* the imposition of a constructive trust on the proceeds from the Sheriff's sale. *See* <u>Trustee's Brief, Doc. # 45 at Section 4 (b) which is specifically incorporated herein as if fully set forth</u>. Specifically, the Intervention Petition alleged:

> 14.   In a judgment rendered in the United States Bankruptcy Court for the Northern District of Oklahoma, case #11-12457-M, and corresponding Adversary Proceeding, case # 12-01003-M, the terms of which were agreed to by these Defendants, the Court made findings that these Defendants, who were the debtors in the bankruptcy court … (a) received improper benefits from services performed on their residence in the amount of $157,811.16, (b) wrongfully converted funds from the Plaintiff through tortious and wrongful acts, knowingly and willfully committed, by falsifying financial records of the Plaintiff in a systematic concerted, and deliberate scheme to misappropriate the funds, and (c) in so doing, violated fiduciary duties owed to the Plaintiff;

> 15.   The bankruptcy court rendered a non-dischargeable judgment in favor of this Plaintiff against these Defendants, jointly and severally, in the amount of $1,078,064.33;

> 16.   On December 12, 2012, this Court entered judgment (a) imposing a constructive trust on these Defendants' home in Osage County, and in favor of this Plaintiff, in the amount of $157,811.36 and (b) foreclosed these Defendants' interest(s) in that property;

> 17.   A <u>constructive trust should be imposed</u> over all property currently owned or acquired by the Defendants after the date of the filing of the original Petition herein so as to preserve the rights of the Interveners to be made whole;

<u>Exhibit 11</u> (emphasis supplied). *See also* <u>Exhibit 9</u>. As such, both the Application to Intervene and the Petition in Intervention expressly tied the relief requested to (a) the agreed upon non-dischargeable judgment rendered by this Court against the Plaintiff and Gwenna on December 3, 2012, <u>Exhibit 8</u>, and (b) the consent judgment rendered in the Foreclosure Case by which the court imposed the constructive trust over the real property. <u>Exhibit 9</u>. ***Neither Gwenna nor this Plaintiff filed an Answer*** to the Petition in Intervention nor did either of them file any motion opposing the intervention of CFR and Westport due, or related to, any issue with regard to the bankruptcy. <u>Exhibit 5</u>. Indeed, on July 18, 2012, this Court entered an Order that expressly

recognized that the Osage County Real Property that was the subject of the Foreclosure Case would no longer be property of the bankruptcy Estate if a constructive trust were imposed. Exhibit 7.

In the Foreclosure Case, Kleinco proceeded pursuant to the relief from the automatic stay that it had obtained from this Court, this Court's Order denying the exemption claimed by this Plaintiff and Gwenna, and the constructive trust judgment entered in the Foreclosure Case. Those judgments and the Order denying the claimed exemption resulted in the Real Property no longer being part of the bankruptcy Estate because Kleinco's constructive trust claim had been properly established in the Foreclosure Case. *Id.* As a result, Kleinco obtained a priority position in and to the proceeds from the Sheriff's sale. *See* Part VII, infra, containing the citation to cases establishing the priority position of Kleinco over CFR and Westport in and to the proceeds ultimately collected from the Sheriff's sale that exceeded BOKF's mortgage.

The Plaintiff in the present matter was personally served with CFR's and Westport's Petition in Intervention in the Foreclosure Case on March 14, 2013. Exhibit 4. Gwenna was personally served on March 16, 2013. *Id.* When **neither filed an Answer**, judgment was entered against this Plaintiff which imposed a constructive trust over the proceeds from the Sheriff's sale that were in excess of the amount necessary to satisfy the mortgage indebtedness owed to BOKF and pay statutory costs. Exhibit 12. The relief granted to CFR and Westport was no different from the relief granted to Kleinco; both being tied to the agreed judgment in this Court and both being based on a constructive trust that attached to property that was no longer part of the Estate. *Compare* Exhibits 9 & 12. Following the Sheriff's sale in the foreclosure case, money that was in excess of the funds needed to satisfy BOKF's mortgage were ordered to be held by the clerk of the Osage County District Court pending further order. Exhibit 13.

On April 29, 2013, the Movants filed in the Foreclosure Case their Application to disburse funds pursuant to the *in rem* judgment previously rendered in their favor. Exhibit 14. **Neither this Plaintiff nor Gwenna filed any objection to that Application**. Exhibit 5. Thereafter, on May 23, 2013, the Movants filed an Alternative Motion for Post-Judgment Deficiency Orders, again related to the monies obtained at the

Sheriff's sale and being held in the registry of the Osage County Court Clerk awaiting distribution pursuant to court order. Exhibit 15. *Once again, neither this Plaintiff nor Gwenna filed any objection to that Alternative Motion*. Exhibit 5. On February 14, 2014, the funds being held by the clerk of the court were distributed to The Estate of Tom Drummond, Kleinco, CFR, and Westport. Exhibit 16. *Neither this Plaintiff nor Gwenna filed any post–trial motion seeking relief from the disbursement order*. Exhibit 5.

The Lynches did take an appeal to the Oklahoma Supreme Court following the termination of the Foreclosure Case. In their appeal (the "Foreclosure Appeal" [Oklahoma Supreme Court case no. DF-112123]), the only issue raised by the Petition in Error sought reversal of the Journal Entry of Judgment that denied the Motion to Vacate the Order Confirming the Sheriff's Sale in the Foreclosure Action. Exhibit 17.[3] *The Petition in Error does not challenge the propriety of the disbursement of funds in the Foreclosure Action*. The Plaintiff's Oklahoma Supreme Court Brief does not address the issue of disbursal of funds. Exhibit 19. Moreover, as the Trustee stated in his Brief, Doc. # 45, *neither this Plaintiff nor Gwenna filed a proper appeal from this Court's judgment* and any issues related thereto and cannot now be urged in the form of a collateral attack through the Amended Complaint. *Id.* at pp. 5 – 10 and 12 – 14, which are specifically incorporated herein as if fully set forth.

As the debtors in the underlying bankruptcy proceeding, *neither the Plaintiff nor Gwenna listed any indebtedness to the Movants on their schedules*. Exhibit 20. Moreover, *the Movants are not identified on the creditor mailing matrix*. Exhibit 21. The Court is requested to take judicial notice of the Debtors' schedules and the mailing matrix.

III.   Summary of the Allegations Against the Movants.

The Movants were not parties to the Original Adversary Complaint. The gist of the "allegations," most of which are bald legal conclusions, is that the Movants (a) violated the automatic stay by intervening in both

---

[3] The Oklahoma Supreme Court Docket Sheet is appended hereto as Exhibit 18 and the Court is requested to take judicial notice of the entirety of its contents.

the Tulsa County Litigation, Amended Complaint ¶s 65 and 142, and the Foreclosure Case, *Id.* at ¶s 143, 144, and 154, and (b) and engaged in a vast conspiracy with other Defendants in connection with various judgments rendered against the Plaintiff in both this Court and the District Court in Osage County. *Id.* at ¶s 156 and 158. The Amended Complaint demands relief from the Movants in the Fourth Cause of Action for alleged violations of the automatic stay. *Id.* at ¶s 176 – 78. In the Eleventh Cause of Action, entitled "*Conspiracy to Commit Fraud and Fraud,*" the Plaintiff inartfully appears to allege that the Movants conspired with other Defendants to commit fraud based on engaging in malicious prosecution, abuse of process, and violating the automatic stay. *Id.* at ¶s 202 - 05.[4] The foregoing represents the entirety of the allegations specifically made against the Movants that relate to the two (2) theories of recovery asserted against them in the Fourth and Eleventh Causes of Action. Amended Complaint at pp. 38 and 42, respectively.

The conspiracy that supposedly lies at the heart of the Defendants' conduct was described as a "conspiracy to form Kleinco … and name Kristen [Daffern] and [Gwenna] as owners … all for the purpose of concealing the assets of Kleinco [and other entities] and to allow [Kenneth Klein] to use funds from said companies for his personal use without leaving a paper trail." Amended Complaint at ¶ 22. That is the only factual description of the "conspiracy" that appears anywhere in the Amended Complaint. Except for some financial and business deals that are totally unrelated to the Movants, from paragraph 22 until the end of the Amended Complaint, the conspiracy is only referred to as "said conspiracy." *Id.* at ¶s 23, 25, 28, 29, 32, 35, 36, 42, 45, 50, 51, 57, 58, 65, 74, 75, 77, 79, 80, 82, 90, 93, 100, 103, 106, 110, 117, 118, 122, 132, 136, 139, 142, 143, 144, 145, 149, 150, 151, 152, 155, 156, 157, and 158. Based on nothing more than mere legal conclusions and a paucity of allegations, the Movants have supposedly conspired with the other Defendants to assist Kenneth Klein in an alleged (a) financial scam that, itself, is an alleged flight of fancy and (b) effort to ruin Gwenna's life.[5]

---

[4] The *ad damnum* clause in the Eleventh Cause of Action requests no relief from the Movants. Amended Complaint pp. 44 – 45.
[5] According to the Plaintiff. Kenneth Klein stated that if Gwenna "fucked with him, he would ruin her life." *Id.* at ¶ 41.

IV.       <u>There has Been no Malicious Prosecution of the Plaintiff</u>.

At the outset, it must be noted that the Plaintiff has not alleged that the Movants engaged in a malicious prosecution; rather, the Movants have supposedly conspired to engage in malicious prosecutorial conduct. For that reason alone, the Amended Complaint is fatally defective and fails to state a claim for malicious prosecution or a conspiracy to engage in such conduct. *See* <u>Part VIII</u>, *infra*.

Even if the Amended Complaint attempted to allege malicious prosecution, it would still be a miserable failure. An essential element of a claim for malicious prosecution is the defendant's prosecution of a civil action against the plaintiff and the successful resolution of that action in favor of the plaintiff. *E.g.,* *Empire Oil & Ref. Co. v. Williams*, 86 P.2d 291, 292 (Okla. 1939). Favorable termination includes the termination of an appeal in the underlying case. *Greenberg v. Wolfberg*, 890 P.2d 895, 904, n. 36 (Okla. 1994), *answer to certified question conformed to* 54 F.3d 787 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 1847 (1996). Malicious prosecution actions are not favored by the courts. *Peterson v. Underwood*, 220 P.3d 1158, 1163 (Okla. Civ. App. 2008).

> To adopt a lax rule favorable to actions for malicious prosecution would be to open the door to such actions, and to close the door to prosecutions, to turn society over to the lawless, and to create a dread on the part of any one who dared to prosecute them. "Actions for malicious prosecution have never been favored in law," and we hardly think we have reached that guileless age in which we can afford to take down the bars.

*Dunnington v. Loeser*, 150 P. 874, 876 (Okla. 1915).

The Amended Complaint alleges that, on August 23, 2011, CFR and Westport were granted permission to intervene in the Tulsa County Litigation commenced by Kleinco to recover the monies that Gwenna and this Plaintiff had embezzled from Kleinco. <u>Amended Complaint, ¶ 65</u>. The OSCN docket sheet clearly reflects, however, that the Tulsa County Litigation has not been terminated in the Plaintiff's favor. <u>Exhibit 1</u>.

The Foreclosure Case appeal does not, in any way, seek to reverse the state court's decision disbursing funds to CFR and Westport. *Compare* <u>Exhibits 17, 18, and 19</u> *with* <u>Exhibits 14, 15 and 16</u>. Those

funds were obtained based on the Sheriff's sale purchase of the Plaintiff's residence for an amount in excess of the funds needed to satisfy the mortgage. The funds were disbursed pursuant to the judgment that imposed the constructive trust related to foreclosed property that was not part of the Estate.

This Court should not "go out on the proverbial limb" and deviate from the rules stated above. Because neither the Tulsa County Litigation nor the Foreclosure Case appeal can ever be favorably resolved in the Plaintiff's favor *vis-à-vis* the distribution of funds to the Movants, the malicious prosecution claim should be summarily dismissed.

## V.    As a Matter of Law, There was no Abuse of Process by the Movants.

At the outset, and for the same reasons stated in Part IV, above, related to malicious prosecution, the Amended Complaint must be dismissed. Even if the Amended Complaint attempted to make such allegations, it would fail woefully short of stating a claim for relief for abuse of process or some nebulous conspiracy to commit same. *See* Part VIII, *infra*.

In *Oklahoma Nat. Gas Co. v. Mahan & Rowsey, Inc.*, 48 B.R. 767 (W.D. Okla. 1985), *aff'd*, 786 F.2d 1004 (10th Cir.), *cert. denied*, 107 S. Ct. 185 (1966), it was held that the pursuit of litigation to obtain a judgment to which a party is entitled cannot be an abuse of process. *Id.* at 777. In *Meyers v. Basic Ideal Inds., Inc.*, 940 F.2d 1379 (10th Cir. 1991), *cert. denied*, 112 S. Ct. 935 (1992), the court stated that improper use of process must be shown by some definite act or threat not authorized by the process. *Id.* at 1282. Thus, the court held that a mere showing that the defendant carried out the process to its authorized conclusion, even if done so with bad intent, is insufficient to state a claim for abuse of process. *Id.* An essential element of a claim for abuse of process is an ulterior or improper purpose. *Erikson v. Pawnee Cty.*, 263 F.3d 1151, 1155, n. 5 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 1438 (2002) ("Plaintiff's conclusory allegation is insufficient to survive defendants' motions to dismiss" and "'conclusory allegations without supporting factual averments are insufficient to state a claim ….'" and "district court is not required to accept '"footless conclusions of law"' in ruling on motion to dismiss").

The preface to the Amended Complaint seeks damages for an ongoing civil conspiracy to commit fraud and for ongoing fraud committed by all of the non-governmental Defendants <u>other than the Movants</u>. <u>Amended Complaint at p. 2</u>. Throughout the allegations thereafter, the Plaintiff simply refers to "said conspiracy." The filing of the Petition in Intervention in the Tulsa County Litigation is supposedly "part of said conspiracy." *Id.* at ¶ 65. But the state court allowed the intervention because there was nothing improper about the process, the Application to Intervene was clearly filed prior to the commencement of the Bankruptcy Proceeding, neither this Plaintiff nor Gwenna objected to the Intervention, and no monetary relief was ever awarded to CFR and Westport in that case.

The intervention in the Foreclosure Case was also supposedly "part of said conspiracy," *id.* at ¶'s 142 – 44 and 153 - 54, but (a) the intervention <u>and</u> the disbursement of funds to CFR and Westport were clearly tied to the relief sought by Kleinco (which had obtained relief from the automatic stay), (b) Kleinco had successfully imposed a constructive trust on the Real Property, (c) the debt identified in the Petition in Intervention was never included in the bankruptcy schedules, and (d) the relief ultimately granted was *in rem* and merely represented a division of the monies to which Kleinco was entitled as a priority creditor with a non-dischargeable judgment against the Plaintiff. As such, there was no damage to either the Estate or this Plaintiff by the payments made to CFR and Westport because Kleinco would have received the entirety of the funds held in the registry of the state district court clerk. *See* Part VII, infra.

The Amended Complaint contains none of the allegations necessary to state a claim for abuse of process. There are no allegations of unlawful, improper use of the process of either the Tulsa County Litigation or the Foreclosure Action to achieve an improper end or force this Plaintiff to do an act he could not be compelled to do. There are no allegations that definite acts or threats were undertaken that were outside the confines of the Petitions in Intervention in the Tulsa County Litigation or the Foreclosure Case. The Amended Complaint contains nothing but improper legal conclusions that must be disregarded in determining that the Amended Complaint fails to state a claim for relief.

9

The reason that the necessary allegations are not made is simple—there is no factual basis for any such allegations. There never can be. The Plaintiff cannot possibly prevail on an abuse of process theory against the Movants. As such, that claim should be summarily dismissed.

VI.     There is no Fraud and it Certainly was not Properly Pleaded.

Once again, there are no particularized allegations of fraud by the Movants. Indeed, the allegations all relate to some barely defined conspiracy to defraud. That is not enough to state a claim for relief based on fraud or some conspiracy to commit same. *See* Part VIII, *infra*.

FRCP 9 (b) requires that the circumstances of an alleged fraud must be pleaded with particularity. *Nolan Bros., Inc. v. United States*, 266 F.2d 143, 146 (10th Cir. 1959). The elements of common law fraud are  (i) a false material representation, (ii) made as a positive assertion that it is either known to be false or one that is made recklessly without regard for its truth, (iii) with intent that it be relied on by the plaintiff, and (iv) which is actually relied on to the plaintiff's detriment. *Brown v. Founders Bank & Trust Co.*, 890 P.2d 855, 862, n. 17 (Okla. 1994). Actual fraud must include allegations of "a dishonest purpose and an intent to deceive … for the purpose of actually and knowingly defrauding [another]." *Weston v. Acme Tool, Inc.*, 441 P.2d 959, 962 (Okla. 1968).

The Amended Complaint is woefully inadequate. It does not contain the factual allegations to support the requisite elements of fraud. Indeed, it cannot because no representations of any kind were ever made to the Plaintiff. The Plaintiff does not even attempt to allege any type of intent or reliance, let alone reasonable reliance. Use of the catchphrase "part of said conspiracy" does not and cannot cure the blatant defect in the allegations. Not only is the Amended Complaint sorely lacking in particularity to describe this supposed fraud, there is truly no fact alleged to give rise to a belief "that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *U.S. v. Warren Clinic, Inc.*, 2014 WL 5704884, *1 (N.D. Okla.). This Plaintiff has not provided sufficient factual allegations to "nudge" his "claims across the line from conceivable to plausible." *Id.* at *2. "This requirement of plausibility serves not only to weed out claims that do not (in the

10

absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.*

The reason for the glaring deficiencies in the Amended Complaint is, once again, simple; there is no factual basis for the claim. Because the Plaintiff cannot succeed on his claim of fraud it should be summarily dismissed.

VII.    **The Automatic Stay was not Violated: The Rights of CFR and Westport are Derived from Kleinco's Recovery.**

Kleinco obtained an Order granting it relief from the automatic stay on July 18, 2012. Exhibit 6. On that same date, that relief was tied to Kleinco obtaining a judgment imposing a constructive trust. Exhibit 7. That relief was obtained by Kleinco in the Foreclosure Case. Exhibit 9.  The automatic stay as to the proceeds from the Sheriff's sale was no longer in effect when, on February 15, 2013, CFR and Westport petitioned to intervene in the Foreclosure case, Exhibit 10, and obtained judgment on April 8, 2013, imposing a constructive trust of the very type, and related to the dame asset, as had been obtained by Kleinco. Exhibit 12.

A.    Kleinco's Interest in and to the Proceeds From the Sheriff's Sale was Superior to the Interests of CFR and Westport and Their Receipt of a Part of the Funds did not Deprive the Debtors or the Estate of any Monies.

Kleinco clearly had priority over CFR and Westport with regard to the funds ultimately distributed in the Foreclosure Case. Exhibits 13 and 16. Oklahoma has adopted the "make whole" theory regarding the competing interests of the insurer seeking subrogation and its policyholder who was not fully compensated. The first case to consider it, stated: "The issue before us subsumes a question of Oklahoma law of first impression: Is a contractual subrogation or reimbursement provision, which contains no priority of payment provision, enforceable under Oklahoma law where the recipient of the benefits sought to be recovered has not been fully compensated by payments from a third party? We answer no." *Equity Fire & Cas. Co. v. Youngblood*, 927 P.2d 572, 574 (1996). In *Reeds v. Walker*, 157 P.3d 100 (2006), the court acknowledged

its adoption of the make whole rule but noted that "in the absence of a priority of payments provision, an insurer's right to reimbursement may only be enforced if and when the injured person has been fully compensated." *Id.* at 114.

The only conclusion that can be drawn is that, based on the "make whole" rule, Kleinco had priority over CFR and Westport. As such, without regard to the ultimate receipt of funds by Westport and CFR, the entirety of the proceeds generated by the Sheriff's sale that were over and above the amount needed to satisfy BOKF's mortgage would have been received by Kleinco pursuant to its judgments. None of the funds would have been returned to this Plaintiff or Gwenna. Based on this Court's denial of the exemption, none of the funds could be re-infused into the Estate.

Although the rights of CFR and Westport have always been acknowledged to be inferior to, and to have been derived from, the rights of Kleinco, the rights of CFR and Westport also stand alone in that they were properly pursued and payment was based on the same legal principles related to constructive trusts and the proceeds no longer being a part of the Estate once Kleinco successfully imposed a constructive trust. The same conclusion obtains based on the constructive trust obtained by CFR and Westport.

Regardless of whether the rights of CFR and Westport are derivative or direct, it is clear that the disbursal of the funds was entirely correct and cannot now be challenged in this Court. In addition, neither this Plaintiff nor Gwenna were in any way prejudiced or damaged by the receipt of funds by Westport and CFR because Kleinco would have taken the entirety of the funds distributed to it, CFR, and Westport.

B.  Principles of Equity Compel the Conclusion That There was no Violation of the Automatic Stay.

In *In re Downing*, 141 B.R. 748 (N.D. Okla. 1992), the Debtor filed for Chapter 11 relief. G.L. Plastering was not listed as a creditor. Thereafter, and without knowledge of the bankruptcy, Plastering filed an action in state court claiming damages for legal malpractice allegedly committed by the Debtor prior to the filing of the Chapter 11 Petition. The Debtor did not notify his attorney, the plaintiff, or the bankruptcy court

that this case had been filed. Debtor also never notified the plaintiff, its attorneys, or the state court of the bankruptcy filing. The state court case was actively litigated and summary judgment was rendered for the plaintiff for compensatory damages.  The state court also ordered a trial on the issue of punitive damages. More than "two years after the filing of the Chapter 11 petition, the Debtor filed a motion in the state court asking that it void the summary judgment against him on the grounds that it violated the automatic stay …." *Id.* at 749. The filing of the motion "was the first time Plastering and its attorneys or the state court knew about the pending Chapter 11." *Id.*  The court stated the issue as follows:

> [W]hether the orders entered by the state court, admittedly in violation of the stay, are void or whether under some circumstances the bankruptcy court can apply equitable principles and hold the state court action is valid even though in violation of the stay.

*Id.* In addressing the issue, after noting the general rule that "any action taken in violation of the stay is void and without effect, *id.* at 750 (quoting *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir.1990), the *Downing* Court stated:

> Many courts, including the Tenth Circuit, however, have created an equitable exception to the above stated rule where the surrounding facts and circumstances dictate that to apply the rule would be inequitable. This exception was recognized by the Tenth Circuit in *In re Calder,* 907 F.2d 953 (10th Cir.1990). In this case, the creditor filed a proof of claim and it was objected to by the debtor because it was based on a state court judgment obtained in violation of the automatic stay. The undisputed facts showed that the debtor actively litigated in the state court action and did not notify the parties or the court of the pending bankruptcy until just before the state court was to enter a final judgment. The Tenth Circuit ruled that the claim should be allowed based upon the state court judgment and to do otherwise would be inequitable. The court stated as follows:
>
>> [U]nder section 362(a), the filing of a bankruptcy petition creates a broad automatic stay protecting the property of the debtor. Ordinarily, any action taken in violation of the stay is void and without effect, even where there is no actual notice of the existence of the stay…. Nevertheless, equitable principles may, in some circumstances, be applicable to claimed violations of the stay. The existing case law indicates that courts will apply equitable considerations at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the creditor's plights. *See, e.g., In re Smith Corset Shops, Inc.,* 696 F.2d 971, 976–77 (1st Cir.1982) (debtor not entitled to protection where debtor remained "stealthily silent" while creditor obtained a default judgment and execution from a state court in violation of the automatic stay); *see also Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir.1984) (laches barred debtor's

> attempt to void a 33–month–old state court judgment on the basis of the automatic stay)....
>
> Calder must bear some responsibility for his unreasonable delay in asserting his rights under section 362(a). Calder's only explanation, that he forgot, is not a legitimate excuse for his delay. To hold otherwise and permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in state court, would be inconsistent with the underlying purpose of the automatic stay which is to give a debtor "a breathing spell from his creditors."

*Id.* Citing to cases decided by the First and Seventh Circuits and the Southern District of New York, the *Downing* Court concluded its analysis by applying the facts as stated above and added:

> This is exactly the type of conduct that has been condemned by the Tenth Circuit as gambling on a state court trial and then when you loose [*sic*], playing the trump card of the automatic stay and asking that the judgment be voided. This is not fair or equitable and cannot be done.

*Id.* (certain internal citations omitted) (emphasis supplied). *See also Onyx Investments, LLC v. Foster,* 2007 WL 1347696, *3 (D. Kan.) (debtor "repeatedly failed to diligently protect its interests.").

In the present matter, the Movants filed the intervention papers in the Tulsa County Litigation prior to the filing of the Chapter 11 Petition. *Compare* Exhibit 2 *with* August 25, 2011 commencement of Ch. 11 Petition. Counsel for CFR was not included on the certificate of mailing in the Notice of Bankruptcy filed in the Tula County Litigation. Exhibit 3. Counsel for CFR and Westport, despite having given notice to counsel for the debtors in the Tulsa County Litigation of the Application to Intervene, which identified the bases for the intervention and the debt owed to CFR and Westport following the Lynches' embezzlement from Kleinco, never received any response to the request to intervene, either on the merits or based on the Bankruptcy Notice filed in the Tulsa County Litigation. Exhibit 1.

Although the Tulsa County Litigation was not actively litigated, the Foreclosure Case was actively litigated but not once did this Plaintiff, Gwenna, or any of the attorneys representing them ever raise the issue of the automatic stay as a bar to the claims of CFR and Westport. Exhibit 5. Clearly, the docket sheet reflects that they had numerous opportunities to do so. *Id.* Such behavior is completely unreasonable and is the

14

cause of this Plaintiff's insurmountable predicament. Indeed, behavior of that type is precisely the kind of gamble based on stealthy silence that this Court has decried and found to be inequitable when, as here, the Plaintiff essentially attempts to mount an impermissible collateral attack on (i) Foreclosure Case decisions from which no issues were raised on appeal and (ii) orders of this Court from which no appeal was properly lodged.[6] Even assuming that there was a technical violation of the automatic stay, no damages resulted from any such violation because Kleinco, as stated above, would have gotten all the funds. It necessarily follows that any claim as to a conspiracy to violate the automatic stay in connection with the Tulsa County Litigation or the Foreclosure Case necessarily fails.

VIII.    <u>There Was No Conspiracy and Certainly None has been Properly Alleged</u>.

A civil conspiracy is a combination of two or more individuals to do an unlawful act or to do a lawful act by unlawful means. [7] *Gaylord Entertainment Co. v. Thompson*, 958 P.2d 128, 148 (Okla. 1998) ("A conspiracy between two or more persons to injure another is not enough; <u>an underlying unlawful act is necessary to prevail on a civil conspiracy claim</u>." *Id.* at n. 86 (emphasis supplied)). A conspiracy to defraud requires a meeting of the minds on a course of action and an intent to commit a fraudulent act which results in damage to the plaintiff. *Shadid v. Monsour*, 746 P.2d 685, 689 (Okla. Civ. App. 1997) (ultimately, clear and convincing evidence is required to establish a prima facie case, thus imposing "a tremendous burden on a conspiracy plaintiff ....") To state a claim for civil conspiracy there must be allegations of an understanding or an agreed plan. *Crabtree by and through Crabtree v. Muchmore*, 904 F.2d 1475, 1476 (10th Cir. 1990).[8]

---

[6] When the Plaintiff filed a purported Notice of Appeal, <u>Doc. # 156</u>, that was dismissed, <u>Doc. # 165</u>, Judge Michael issued a show cause order that quite generously gave this Plaintiff's attorney an opportunity to explain and possibly cure the jurisdictional aspect of the "Notice of Appeal." <u>Doc. # 168</u>. Plaintiff's attorney filed nothing in response to Judge Michael's Order. <u>Doc. # 169</u>.

[7] "Because plaintiff has failed to allege facts showing that defendants conspired to prosecute him with an ulterior or improper motive separate and apart from the alleged desire to obtain first degree murder convictions without probable cause, plaintiff's allegations should only be analyzed in terms of an attempt to plead a claim for malicious prosecution." *Erikson v. Pawnee Cty.*, 263 F.3d 1151, 1155, n. 5 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 1438 (2002). In the present matter, it has been established that the Plaintiff cannot prevail on his claims for malicious prosecution, abuse of process, fraud, and violation of the automatic stay. *See* Parts IV, V, VI and VII, *supra*.

[8] *Crabtree* teaches that truly frivolous suits based on conspiracies, suing judges for acts taken in their official capacities (much like the present case) are dismissed as a matter of course and result in sanctions.

In *Shaffer v. Cook*, 634 F.2d 1259 (10th Cir. 1980), *cert. denied*, 101 S. Ct. 2316 (1981), the court considered a conspiracy claim similar to that asserted by the Plaintiff herein who alleges a conspiracy between and among the Defendants and the courts in Tulsa and Osage Counties. In addressing the conspiracy allegations, the *Shaffer* Court stated:

> It is our view that the critical inquiry in making this determination is: Has the plaintiff demonstrated the existence of a significant nexus or entanglement between the absolutely immune State official and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy? The resolution of such issues must, of necessity, be made on a case-to-case basis.
>
> Appellant's only allegation supporting his conspiracy theory against the attorneys is that he saw one of them speak with the judge in the courthouse before each hearing. The complaint thus concludes that that attorney, and the other by association apparently, had defrauded him in a conspiracy with the court. <u>Nothing in the complaint indicates that the court or the attorneys were acting outside the confines of the neutral function of a judicial forum</u>. … Appellant's amended complaint <u>fails to allege the kind of conspiratorial nexus</u> between Judge Cook and the attorneys contemplated in Norton that would support a cognizable § 1983 or § 1985 non-immune conspiracy intended to deprive appellant of his constitutional rights. The pro se complaint was thus properly dismissed.

*Id.* at 1260 – 61 (quoting *Norton v. Liddell*, 620 F.2d 1375, 1380 (10th Cir. 1980)) (internal citations omitted) (emphasis supplied). Finally, the occasional use of the word "conspired" in a petition is insufficient to state a claim for conspiracy. *Pearl v. Oklahoma City*, 145 P.2d 400, 401 (Okla. 1943) (occasional use of the word "conspired" was insufficient to state a cause of action in conspiracy" because "'[t]he mere charging of a conspiracy, without stating the facts and circumstances which warrant recovery against the claimed conspirators, is not sufficient …").

In the present matter, the repeated use of the phrase "as part of said conspiracy" does not magically transform a deficient Amended Complaint into a viable one.  The Amended Complaint does nothing more than identify activities that are independent conduct without any context from which even to speculate that "said conspiracy" existed. Indeed, the allegations are consistent with the conclusion that the alleged wrongdoers were only acting in a lawful way to protect the interests of their respective clients. The legal requirements for stating a claim for civil conspiracy are notably absent from the Amended Complaint. There

16

are no allegations of plan, intent, agreement, or an understanding among the alleged co-conspirators. As to the Movants, there is a complete absence of allegations to support the conspiracy theory. Legal conclusions do not constitute a claim for relief. The conspiracy theory, like the other theories of recovery, fails as a matter of law. Moreover, there is no possibility of success because the Plaintiff cannot succeed on the underlying theories of recovery. The Amended Complaint is, quite frankly, an abomination and must be dismissed.

### IX.    Further Amendment to the Complaint Would be Futile and Should be Denied.

The foregoing sections establish that the Plaintiff can never succeed on any of his alleged theories of recovery. As such, he should be denied the opportunity to further amend his Complaint based on the futility doctrine.

A court may refuse to allow amendment of a complaint if to amend would be futile. In *Anderson v. Suiters*, 499 F.3d 1228 (10th Cir. 2007), the court stated that "[a] district court may refuse to allow amendment if it would be futile." *Id.* at 1238. "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'" *Id.* "'[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Id.* at 1232 (emphasis in original).

It is certain that this Plaintiff cannot state a claim upon which relief can be granted. There is no reasonable likelihood that any factual support for the claim can be asserted. This Plaintiff has pleaded his evidence and his evidence consists of unsupportable legal conclusions that fall far short of meeting the requirements of the federal rules regarding a plain statement of the facts. In fact, this Plaintiff cannot, as a matter of law, plead facts that would allow this claim to survive. No amount of argument or additional "facts" can change the ultimate outcome or make the claim a viable one. Nothing can be added to the background facts that can change or add additional contest. To allow any further amendment under the circumstances would be utterly futile because this Plaintiff can never cure the defects, *Jablonski v. Pan Am. World Airways,*

*Inc.*, 863 F.2d 289, 292 (3d Cir. 1988 (citing *Foman v. Davis*, 83 S. Ct. 227, 230 (1962)), that present absolute legal barriers to any recovery.

X.    <u>Miscellaneous Considerations</u>.

The Movants adopt and incorporate herein as if fully set forth, the authority, arguments, and requests for Relief by way of sanctions and a referral to the Northern District Committee on Admissions and Grievances set forth in Part 5, pages 18 – 20, inclusive, of the Trustee's Motion and Brief. <u>Doc. # 45</u>.

XI.    <u>Conclusion</u>.

None of the asserted claims for relief against the Movants are even remotely plausible, let alone legally sufficient to overcome dismissal. Because the claims are fatally flawed, the Defendants, CFR, Inc., Westport Insurance Corporation, and Bruce A. McKenna, respectfully request that the Plaintiff's Amended Complaint be dismissed, that the Plaintiff be denied any right to further amend his Complaint, and that they be awarded such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Bruce A. McKenna*
Bruce A. McKenna, OBA No. 6021
McKENNA & PRESCOTT
5801 E. 41st Street, Suite 501
Tulsa, Oklahoma 74135
(918) 935-2085 - Telephone
(918) 935-2086 - Facsimile

CERTIFICATE OF SERVICE

I do hereby certify that on January 27, 2015, a true and correct copy of the foregoing document, was filed electronically with the United States Bankruptcy Court for the Northern District of Oklahoma and served via CM-ECF electronic service.

By: s/ *Bruce A. McKenna*

18